805 F.2d 34
 55 USLW 2303, 2 UCC Rep.Serv.2d 1012
 The FOXBORO COMPANY, Plaintiff, Appellee,
v.
ARABIAN AMERICAN OIL COMPANY, et al., Defendants, Appellees,
Citibank International, Defendant, Appellant.
The FOXBORO COMPANY, Plaintiff, Appellee,
v.
ARABIAN AMERICAN OIL COMPANY, et al., Defendants, Appellees,
Saudi American Bank, Defendant, Appellant.
The FOXBORO COMPANY, Plaintiff, Appellee,
v.
ARABIAN AMERICAN OIL COMPANY, Defendant, Appellant.
 Nos. 86-1521 to 86-1523.
 United States Court of Appeals,
First Circuit.
 Heard Sept. 3, 1986.
Decided Nov. 13, 1986.
 
 Douglas H. Meal with whom John M. Harrington, Jr., Paul J. O'Donnell and Ropes & Gray, Boston, Mass., were on brief, for defendant, appellant Arabian American Oil Co.
 William Van Orden Gnichtel with whom Richard F. Lawler, Richard F. Markert and Whitman & Ransom, New York City, were on brief, for defendant, appellant Saudi American Bank.
 Francis H. Fox with whom Richard L. Burpee, Robin R. Patrick and Bingham, Dana & Gould, Boston, Mass., were on brief, for defendant, appellant Citibank Intern.
 Robert K. Sheridan, Boston, Mass., Executive Vice President, on brief, for Mass. Bankers Ass'n, Inc., amicus curiae.
 John L. Warden, H. Rodgin Cohen, Michael Straus, Melanie L. Cyganowski and Sullivan & Cromwell, New York City, on brief, for The New York Clearing House Ass'n, amicus curiae.
 Terrance W. Schwab, Sarah L. Reid, James T. Tynion, III and Kelley Drye & Warren, New York City, on brief, for The Council on Intern. Banking, Inc., amicus curiae.
 Henry Harfield, Elsie A. Crum and Shearman & Sterling, New York City, on brief for The Bankers' Ass'n, for Foreign Trade, amicus curiae.
 Anthony M. Feeherry with whom Sally A. VanderWeele, Barbara Gruenthal and Goodwin, Procter & Hoar, Boston, Mass. were on brief, for plaintiff, appellee The Foxboro Co.
 Before BOWNES and TORRUELLA, Circuit Judges, and CARTER,* District Judge.
 TORRUELLA, Circuit Judge.
 
 
 1
 This appeal concerns the propriety of a preliminary injunction to prevent the honoring of an international letter of credit. Because plaintiff has failed to demonstrate irreparable harm, we reverse the district court and vacate the preliminary injunction. See Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006 (1st Cir.1981).
 
 I. The Contract and Letter of Credit
 
 2
 In March 1984 plaintiff, The Foxboro Company ("Foxboro"),[1] a Massachusetts corporation, contracted with the Arabian American Oil Company ("Aramco"), a Delaware corporation, to provide a process control system for the Qasim Refinery in Saudi Arabia. Under the agreement Foxboro was to receive certain scheduled payments upon reaching specified contractual milestones. Foxboro had the option of allowing Aramco to retain a percentage of the payments as security, or of providing a bank guarantee to Aramco equal to the amount Aramco could retain. The contract provided that disputes be governed by Saudi Arabian law and be subject to arbitration.
 
 
 3
 Foxboro elected to provide the bank guarantee, which was issued by Saudi American Bank ("Samba") to Aramco. The Samba guarantee was itself secured by a letter of credit issued by Citibank on Foxboro's behalf. This "four-way" security is a typical commercial arrangement for American contractors doing business in the Middle East.
 
 
 4
 In March 1985 Aramco terminated the contract for "convenience," as it was authorized to do under the contract.[2] In February 1986, after eleven months of negotiation over post-termination obligations, Aramco made a demand on the Samba bank guarantee, and Samba, in turn, made a demand on the Citibank letter of credit. Foxboro sought a temporary restraining order to prevent the execution of the letter of credit or bank guarantee. Foxboro alleged that the demand on the guarantee was fraudulent. The district court granted the restraining order, 634 F.Supp. 1226, and thereafter issued the preliminary injunction which is the subject of the appeal in this case.
 
 II. Review of the Preliminary Injunction
 
 5
 To obtain a preliminary injunction a plaintiff must show:
 
 
 6
 (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.
 
 
 7
 Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009. We may reverse a district court's order granting a preliminary injunction only for an abuse of discretion or a clear error of law. See id. at 1009. We find that the district court did commit such an error in its assessment of Foxboro's "irreparable injury." Accordingly, we find it unnecessary to reach the other factors enumerated in the Planned Parenthood test.
 
 
 8
 Foxboro and Aramco are disputing their financial obligations under the contract. Honoring Aramco's demand on the bank guarantee, and Samba's demand on the letter of credit, will transfer money from Foxboro to Aramco, but will not change the merits of the underlying claim. The principal legally cognizable injury to Foxboro is that it will have to seek recovery of these sums through the contractually agreed upon forum. We do not find irreparable injury where only money is at stake and where the plaintiff has a satisfactory remedy at law to recover the money at issue. See Itek Corp. v. First Nat'l Bank, 730 F.2d 19, 22 (1st Cir.1984).
 
 
 9
 In Itek we affirmed the granting of a preliminary injunction to prevent the honoring of a letter of credit. But Itek involved a contract with the imperial government of Iran that was interrupted by the Iranian revolution and the seizing of the American hostages. Allowing the letter of credit to be honored in that case would have created irreparable harm; the plaintiff would have had no adequate remedy at law during the throes of the revolution. This case presents a far different situation.
 
 
 10
 The parties contracted to be bound by Saudi Arabian law and to use Saudi Arabian arbitration in resolving disputes between them. International arbitration provides Foxboro an adequate remedy, see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985), as do the Saudi Courts. See Ahmed v. Boeing, 720 F.2d 224, 226 (1st Cir.1983). Indeed, the underlying contract dispute is currently being arbitrated at Foxboro's behest.
 
 
 11
 Foxboro may also sue Aramco in federal court for any harm done to it by the allegedly fraudulent demand on the bank guarantee and letter of credit. Aramco is a Delaware corporation wholly owned by four United States corporations. Foxboro has not demonstrated that Aramco would be unwilling or unable to pay any judgment debt, or that Aramco lacks sufficient assets in the United States to cover any such debt. Foxboro thus has several avenues open to recover any money due from the allegedly fraudulent demand.
 
 
 12
 The district court found that Foxboro would suffer two forms of irreparable injury if the demand on the bank guarantee and letter of credit were honored. First, Aramco would achieve on "unfair advantage in the ongoing negotiations ... between the parties". And second, Foxboro's business reputation would suffer. Neither of these harms, nor the two combined, are sufficient to constitute irreparable injury in this case.
 
 
 13
 The contract clearly contemplates that Aramco would have an advantage in negotiations. That advantage was the purpose of the retainage or bank guarantee provision. Whether that advantage is "unfair" in this case depends on whether the Aramco demand on the bank guarantee was "fraudulent." See Itek, 730 F.2d at 23-24. If the demand was fraudulent, Foxboro may recover the damages flowing from the fraud in federal court. Thus, an unfair negotiating advantage will not irreparably harm Foxboro.
 
 
 14
 The claimed harm to Foxboro's business reputation presents a more interesting issue. Foxboro claims that Aramco's fraudulent demand will make it more expensive for Foxboro to obtain letters of credit in the future. Whether the demand on the bank guarantee and letter of credit does so depends on how courts treat these credit instruments. If an injunction against an allegedly fraudulent demand can be easily obtained, then the party who is unable to secure such an injunction may be presumed to be subject to a proper demand and, thus, a credit risk in the future. But, if such injunctions are difficult to obtain, the failure to obtain one says nothing about the propriety of the demand on the letter of credit.
 
 
 15
 As we indicated in Itek, an injunction to impede the honoring of a letter of credit is an extraordinary remedy that should rarely be granted. This is so because their near inviolableness is an important element of trust underlying a large segment of international commerce. In contrast, however, the failure to obtain injunctive relief should have little or no consequence for Foxboro's reputation. In fact, it could very well be argued that seeking to prevent payment of an irrevocable letter of credit could have more drastic consequences on the movant's long range business reputation. The district court's contrary finding was speculative. Like the Fifth Circuit, "we are reluctant to accept the district court's inferences that payment on a letter of credit will embroider a permanent 'scarlet letter' on the bodice of the bank's customer." Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 474-75 (5th Cir.1985).
 
 
 16
 We fail to see how the demand on the letter of credit will prejudice Foxboro in future business deals. Letters of credit are independent of the underlying contract. See Emery-Waterhouse Co. v. Rhode Island Hosp. Trust Nat'l Bank, 757 F.2d 399, 404 (1st Cir.1985); U.C.C. Sec. 5-114 comment 1 (1978). Aramco's demand says no more about the merits of any dispute based on the underlying contract than would a complaint filed in court.
 
 
 17
 Accordingly, the order of the district court below is reversed and the preliminary injunction vacated.
 
 
 
 *
 Of the District of Maine, sitting by designation
 
 
 [1]
 Because a non-Saudi company is not permitted to enter directly into contracts in Saudi Arabia, the contract was entered into on Foxboro's behalf by the company's Saudi Arabian commercial representative, Trading and Industrial Group-Trading, Engineering and Service Co. International Ltd. ("TIG-TESCO"). For the purposes of this appeal, we will attribute TIG-TESCO's acts to Foxboro
 
 
 [2]
 Section 19.11 of the contract provided that:
 BUYER may, at any time and at its sole convenience, terminate this procurement contract or any part of the WORK by giving notice to SELLER....