**In re DIAMOND MACHINE CO., Debtor.**

**DIAMOND MACHINE CO., Plaintiff,**

v.

**CASCO NORTHERN BANK, N.A., Defendant.**

Bankruptcy No. 88–20359.

Adv. No. 88–2107.

United States Bankruptcy Court, D. Maine.

Dec. 6, 1988.

Daniel Amory, Benjamin Marcus, Drummond, Woodsum, Plimpton and MacMahon, Portland, Me., for plaintiff.

Jacob Manheimer, Pierce Atwood, Portland, Me., for defendant.

## MEMORANDUM OF DECISION

FREDERICK A. JOHNSON, Chief Judge.

Debtor, by verified complaint, seeks to enjoin Casco Northern Bank, N.A., (Casco), as trustee under an Indenture of Trust, from drawing on a Letter of Credit issued by Rhode Island Hospital Trust (RIHT) in favor of Casco. The letter of credit was issued upon request of the Debtor to assure payment of principal and interest under certain Industrial Revenue Bonds issued by the City of Lewiston, the proceeds of which were used by Debtor for expansion and operation of its business.

Upon the debtor's ex parte motion, which revealed the absence of any default by the debtor in the payment of principal or interest and which indicated that the sole reason for Casco's call upon the Letter of Credit was the debtor's filing of its Chapter 11 petition, the Court issued its Temporary Restraining Order on November 3, 1988. A hearing on the preliminary injunction was scheduled and held on November 10, 1988.

After having considered the pleadings, the evidence presented at trial, the financing documents, and the arguments of counsel, the Court concludes that it may not enjoin Casco from calling the Letter of Credit according to its terms.

The material facts are not seriously in dispute. As evidenced by documents dated April 1, 1985, the City of Lewiston issued its revenue bonds in the amount of $1,200,-000.00. The bonds were issued under authority of Chapter 110 of Title 10 of the Revised Statutes of Maine, entitled Finance Authority of Maine Act. The pertinent purposes of the Act, as stated in Section 962, (10 M.R.S.A. § 962) are to:

stimulate a larger flow of private investment funds from banks, investment insti-

**256**

tutions, insurance companies and other financial institutions, ... to help finance planning, development, acquisition, construction, improvement, expansion and placing in operation of industrial, manufacturing, ... business ... enterprises ... and to increase the access of smaller business ... to financing at reasonable terms and rates.

The Act provides that bonds issued under sub-chapter III, which applies here,

shall not constitute any debt or liability of the State or of any municipality therein or any political subdivision thereof, or of the authority or a pledge of the faith and credit of the State or of any such municipality or political subdivision, but shall be payable solely from the revenues of the project or projects for which they are issued or from other eligible collateral or the revenues or proceeds of other eligible collateral pledged to the payment of the revenue obligation securities and all such securities shall contain on their face a statement to that effect.

(10 M.R.S.A. § 1044(9)) also (10 M.R.S.A. § 1064(6)).

The Bonds contain similar language, as do the other Financing Documents.

The Financing Documents state that "Bond Purchasers are unwilling to purchase the Bonds unless the Bonds are further secured by an irrevocable letter of credit issued by the Bank." ([RIHT] Reimbursement Agreement, Page 2.)

The bond proceeds were loaned to the debtor and were used for construction of a building in the City of Lewiston and for the acquisition of machinery and equipment.

As part of the transaction the debtor and the City executed a Loan Agreement which provided for a loan of $1,200,000 by the City to the debtor. The debtor signed a promissory note in that amount. The loan agreement states that in consideration of the issuance of the City's bonds the debtor "has caused" the Rhode Island Hospital Trust National Bank (RIHT) to issue an Irrevocable Letter of Credit to the Trustee

(Casco) as security for the bonds. The Loan Agreement provides that if the debtor shall "commence a voluntary case under the Federal Bankruptcy Code ... or file a petition seeking to take advantage of any other law relating to bankruptcy, insolvency, reorganization ..." such action shall constitute an "Event of Default." (Article VII, Section 7.1).

As an additional part of the bond issue the City entered into an Indenture of Trust with Casco whereby Casco became Bond Trustee. Under the Indenture of Trust, Casco took an assignment of the promissory note and the Loan Agreement.

The debtor, as provided for in the Loan Agreement and the Indenture of Trust, caused RIHT to issue its irrevocable letter of credit in favor of Casco, as Trustee, in the stated amount of $1,260,000 representing principal and interest. As inducement to RIHT to issue its letter of credit the debtor and RIHT executed a Reimbursement Agreement. The Reimbursement Agreement provided that the commencement of a voluntary case under the Federal Bankruptcy Laws by the debtor shall constitute an event of default. Section 10(i)(v).

The debtor filed a Chapter 11 petition in this court on October 20, 1988. On October 31, 1988, Casco, as Trustee, advised the bondholder that an event of default had occurred. On November 1, 1988, Casco received from the bondholder[1] a written request to draw on the letter of credit. The approximate amount due on the Bonds is $1,020,000.00. On November 3, 1988 this adversary proceeding was commenced.

The debtor's arguments in support of the relief sought are appealing. It is stipulated by the parties that every payment of principal and interest required under the financing documents have been timely made and that the sole event of default was the debtor's filing for relief under Chapter 11 of the bankruptcy Code. Casco concedes that if this court had not issued its Temporary Restraining Order, Casco, as

---

1. A single bondholder holds all of these bonds. They were acquired in a secondary market transaction.

Trustee, would have drawn on RIHT's Letter of Credit the full amount of principal and interest due on the Bonds.

The debtor correctly points out that should there be a future payment default by the debtor the Letter of Credit remains available to secure the bondholders and that Casco should be prevented from drawing on the Letter of Credit at this time on the "technical default" of the Chapter 11 filing.

The debtor argues that Casco's draw on the Letter of Credit will deprive the debtor of the benefits of Chapter 11 to which it is entitled. The debtor asserts that under Section 1129(a)(8) of the Code it is entitled to confirmation of a plan "which *inter alia*, does not impair a class of claims or interests." It then points to Section 1124 of the Code which provides that a class of claims are not impaired if the debtor cures any default, other than a default specified in Section 365(b)(2) of the Code. Section 365(b)(2) contains the so-called *ipso facto* clause, which is a clause in an executory contract or lease that provides that the commencement of a case under the Bankruptcy Code constitutes a default.[2]

The debtor further argues that if the Letter of Credit is drawn upon it will forever lose the advantage of the favorable financing it now enjoys and that its efforts to reorganize under Chapter 11 will be seriously jeopardized.

Casco, as Bond Trustee, argues that the debtor has not, and can not satisfy the criteria necessary for a Preliminary Injunction.

## DISCUSSION

In determining whether to grant a preliminary injunction the court must consider four criteria:

1. Whether the plaintiff will suffer irreparable injury if the injunction is not granted;

2. Whether such injury outweighs any harm which granting injunctive relief would inflict on the defendant;

3. Whether the plaintiff has exhibited a likelihood of success on the merits;

4. Whether the public interest will not be adversely affected by the granting of the injunction.

*Foxboro Co. v. Arabian American Oil Co.*, 805 F.2d 34, 36 (1st Cir.1986); *Massachusetts Assn. of Older Americans v. Sharp*, 700 F.2d 749, 751 (1st Cir.1983).

In this circuit the probability of success on the merits "has loomed large" in cases before the court. *Massachusetts Assn. of Older Americans v. Sharp, supra,* at 751.

To establish this criterion the debtor is required to show at least a substantial possibility, and at most a probability of prevailing on the merits. *UV Industries v. Posner*, 466 F.Supp. 1251, 1256 (D.C.Me. 1979). The debtor has failed to satisfy this criterion. Important public policy considerations are present here also which militate against the debtor.

The reported cases and other authorities teach us that letters of credit have historically enjoyed a unique and favored status in business and commerce. *Foxboro Co. v. Arabian American Oil Co.*, 805 F.2d 34 (1st Cir.1986); *ITEK Corp. v. First National Bank of Boston*, 730 F.2d 19 (1st Cir.1984); *In re Originala Petroleum Corp.*, 39 B.R. 1003 (Bankr.N.D.Tex.1984); *In re Pine Tree Elec. Co., Inc.*, 16 B.R. 105 (Bankr.D.Me.1981) and 34 B.R. 199 (Bankr. D.Me.1983).

The purpose of the Letter of Credit issued by RIHT was to substitute the known and secure credit of the Bank for the unknown and perhaps risky credit of the debtor. *See Insurance Company of North America v. Heritage Bank*, 595 F.2d 171, 173 (3rd Cir.1979) (*cited in In re Page*, 18 B.R. 713, 717 (D.D.C.1982). It is significant that the credit of the municipality or the State of Maine is not involved in these Revenue Bond transactions. 10 M.R.S.A.

---

**2.** The parties have not addressed the issues of whether or not we are dealing with an executory contract here, or if this transaction is a contract to "extend other debt financing or fi- nancial accommodations ... or to issue a security of the debtor" within the meaning and intent of Section 365(e)(2)(B). The court expresses no opinion as to those issues.

§ 1044(9). The purchasers of the bonds relied upon the known and secure credit of the issuing Bank made available by the Letter of Credit.

> The very object of a letter of credit is to provide a near foolproof method of placing money in its beneficiary's hands when he complies with the terms contained in the letter itself....

*ITEK Corp. v. First Nat. Bank of Boston,* 730 F.2d at 24.

The Financing Documents clearly provide that the filing of a Chapter 11 petition constitutes an event of default. The debtor's directors and officers, presumably experienced in business, are charged with the knowledge of this. *In re Originala Petroleum Corp., supra,* 39 B.R. at 1016.

Many revenue bonds have been issued under the authority of the Finance Authority of Maine Act. According to Casco's expert these bonds are usually secured by letters of credit and the bond purchasers rely upon the letters. If a debtor could file a Chapter 11 petition and obtain an injunction from the bankruptcy court against drawing on the letter it would create havoc in the revenue bond market. The Maine Act, the stated purpose of which is to "stimulate ... investment funds" and "increase the access of smaller business ... to financing at reasonable terms," would be adversely affected.

The Court concludes that it must not issue its preliminary injunction against the bond trustee, as requested by the debtor. "[An] injunction to impede the honoring of a letter of credit is an extraordinary remedy that should rarely be granted." *Foxboro Co. v. Arabian American Oil Co., supra,* 805 F.2d at 37.

The debtor's request for a Preliminary Injunction will be denied and the Temporary Restraining Order issued on November 3, 1988 will be vacated.

An appropriate order will be entered.