**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,**

v.

**Peter C. BISHOP, Defendant.**

**Civ. No. 93–339–P–C.**

United States District Court, D. Maine.

Dec. 2, 1993.

---

William J. Kayatta Jr., Jeffrey M. White, Pierce, Atwood, Portland, ME, Michael J. Fortunato, Rubin & Associates, Paoli, PA, for plaintiff.

William C. Knoles, Roger Clement, Verrill & Dana, Portland, ME, for defendant.

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

GENE CARTER, Chief Judge.

### I.

A Complaint seeking injunctive relief against Defendant Peter C. Bishop alone (Docket No. 1) was filed in this Court on November 29, 1993. It is an unverified complaint. *See* Fed.R.Civ.P. 65(b). With the Complaint is filed a Motion by Plaintiff for a Temporary Restraining Order (Docket No. 2–1), supported by the Affidavit of David Snow (Docket No. 3), the present resident manager of Plaintiff's Portland, Maine branch office. The Court has reviewed the papers in support of the pending Motion for Temporary Restraining Order and is now prepared to rule upon the motion.[1] The oral

---

1. The Court has also carefully considered Defendant's objection to Plaintiff's Motion for Tempo-

request of Plaintiff's counsel for an *ex parte* conference with the Court is *DENIED* as unnecessary. The oral request of Defendant's counsel is likewise *DENIED*.

■ This Court has previously set the parameters of the evidentiary predicate to be met in the case of a request for preliminary injunction in the following words:

> In order to prevail on its request for preliminary injunctive relief, the plaintiffs must satisfy four essential requirements. This Court had had occasion in the past to set out succinctly those requirements in *UV Industries, Inc. v. Posner*, 466 F. Supp. 1251 (D.Me.1979) (per Gignoux, J.):
>
> > It is well settled law that, in the ordinary case, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which the granting of injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the motion.

*Id.* at 1255; *see also Women's Community Health Center, Inc. v. Cohen*, 477 F. Supp. 542, 544 (D.Me.1979) (per Gignoux, J.). This formulation of these criteria has been approved by the United States Court of Appeals for the First Circuit. *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981) *(quoting Women's Community Health Center, Inc.)*; *Keefe v. Geanakos*, 418 F.2d 359 (1st Cir.1969); *Automatic Radio Manufacturing Co., Inc. v. Ford Motor Co.*, 390 F.2d 113 (1st Cir. 1968), *cert. denied*, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968). This Court has indicated in the recent past the continuing applicability of these requirements to a request for temporary injunctive relief. *Stanton v. Brunswick School Department*, 577 F. Supp. 1560 (D.Me.1984) (per Carter, J.); *Sheck v. Baileyville School Committee*, 530 F. Supp. 679 (D.Me.1982) (per Cyr, C.J.).

Further, it is well established general law with respect to equitable injunctive relief that the Court is to bear constantly in mind that an '[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.' *Plain Dealer Publishing Co. v. Cleveland Type. Union $.53*, 520 F.2d 1220, 1230 (6th Cir.1975), *cert. denied*, 428 U.S. 909, 96 S. Ct. 3221, 49 L.Ed.2d 1217 (1977). The Court's hesitation to utilize so drastic an aspect of its prerogative should be heightened where the relief requested is only temporary in nature. *Kass v. Arden–Mayfair, Inc.*, 431 F.Supp. 1037, 1047 (C.D.Cal.1977). *Saco Defense System Division, Maremont Corp. v. Weinberger*, 606 F.Supp. 446, 449–50 (D.Me.1985). *See also Kardex Systems, Inc. v. Sistemco, N.V.*, 583 F.Supp. 803, 809 (D.Me.1984). In order to make a suitable showing of irreparable injury, the moving party must establish a colorable threat of immediate injury, *see Massachusetts Coalition of Citizens With Disabilities v. Civil Defense Agency*, 649 F.2d 71, 74 (1st Cir. 1981), and the absence of any adequate remedy at law for such injury. *McDonough v. United States Department of Labor*, 646 F.Supp. 478, 482 (D.Me.1986). Finally, where economic damages are the injury relied upon, it is to be remembered that economic harm, in and of itself, is not sufficient to constitute irreparable injury. *Id. See also McDonough v. Trustees of University System of New Hampshire*, 704 F.2d 780, 784 n. 2 (1st Cir.1983).

Plaintiff's claim for injunctive relief herein arises out of an alleged breach of an employment agreement under which Defendant allegedly agreed that "[a]ll records of Merrill Lynch, including the names and addresses of its clients are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination of my employment for any reason with Merrill Lynch." Financial Consultant Trainee Agreement, ¶ 1, at 1, Exhibit A

___

rary Restraining Order and Preliminary Injunctive Relief (Docket No. 5), filed on December 1, 1993, at 4:27 p.m. as this Memorandum of Decision was in the final stages of preparation.

to Complaint (Docket No. 1). Further, it is asserted that Defendant agreed to "return any original records and purge or destroy any computerized, duplicated, or copied records referred to in paragraph 1 which have been removed from the premises of Merrill Lynch in any form." *Id.* at ¶ 2(ii). It is further contended that under the terms of the Agreement, Defendant agreed not to solicit for a period of one year

> from the date of termination of my employment, any of the clients of Merrill Lynch whom I served or other clients of Merrill Lynch whose names became known to me while in the employ of Merrill Lynch in the office of Merrill Lynch in which I was employed and who reside within one hundred miles of the Merrill Lynch office in which I was employed....

*Id.* at ¶ 2.

Plaintiff alleges that Defendant breached the above-mentioned provisions of the Financial Consultant Trainee Agreement. In particular, Plaintiff alleges that Defendant, while still in the employ of Merrill Lynch, conspired with a competitive securities firm, Tucker Anthony, Inc., to remove originals or copies of Merrill Lynch records including confidential client information and other documents. Plaintiff's Complaint (Docket No. 1) at ¶¶ 19 and 20. The Complaint further alleges that Defendant has solicited Merrill Lynch clients, in violation of his agreement, to terminate their relationship with Merrill Lynch and to transfer their accounts to Tucker Anthony, Inc. *Id.* at ¶ 20.

Plaintiff asserts that in various aspects, Bishop's conduct will cause irreparable harm to Plaintiff including the following:

(1) Disclosure of trade secrets, customer lists, and other confidential information which is solely the property of Merrill Lynch and its clients;

(2) Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of good will, and loss of business reputation;

(3) Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contacts; and

(4) Present economic loss which is unascertainable at this time and future economic loss which is presently incalculable.

Affidavit of David Snow at 11 (Docket No. 3). In brief, counsel for Plaintiff asserts three legal contentions in support of the argument that Defendant's conduct is causing, or will cause, irreparable injury to Plaintiff. The first of these is that "it will be impossible to measure Merrill Lynch's damages with any reasonable degree of certainty." Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunctive Relieve With Incorporated Memorandum of Law at 12 (Docket No. 2). Second, it is asserted that irreparable harm to Plaintiff results from "the fact that Merrill Lynch clients expect their financial information, their market transactions, and the investment assets to be known only to themselves, Merrill Lynch, and Merrill Lynch employees." *Id.* at 13. It is asserted that Defendant's conduct causes Plaintiff to involuntarily breach its pledge of confidentiality in these respects to its clients. *Id.* at 14. Finally, it is asserted that

> immediate injunctive relief also is necessary to protect the stability of Merrill Lynch's Portland office and to discourage competitor firms, such as Tucker Anthony, from paying Merrill Lynch employees to induce them to breach their contractual commitments, to confiscate Merrill Lynch's confidential client records, and divert Merrill Lynch's clients to a competitor.

*Id.* at 14–15.

## II.

The Court concludes that Plaintiff makes a showing of irreparable injury in respect to Defendant's conduct in using or disclosing the contents of documents, or copies thereof, now in his possession and control which are within the scope of paragraphs 1 and 2(ii) of the Financial Consultant Trainee Agreement between the parties dated September 18, 1989. Exhibit "A" to the Complaint (Docket No. 1). Clearly, the continuing use and disclosure of such records by Defendant will cause an injury to Plaintiff (as well as to Plaintiff's protected clients) for which there is no adequate remedy at law.

Plaintiff has contracted for Defendant's performance of the nondisclosure covenant of the Trainee Agreement in order to ensure confidentiality to its clients who are the subjects of the records in question. Once confidentiality is breached, the harm is done and cannot be undone. Plaintiff cannot subsequently perform its commitment to its clients to protect the confidentiality of the documents and the information which they contain. There is no way to recapture and remove from the knowledge of others information improperly disclosed by Defendant. No court order or specific performance can be framed to accomplish that end, and no award of money damages will change the fact that information which Plaintiff was entitled to have kept from the knowledge of third parties is no longer shielded from their gaze. Confidentiality, like pregnancy, is an all or nothing proposition; either it exists or it does not exist.

Clearly, Plaintiff has shown that the damage from the conduct of Defendant in using and disclosing the contents of such records is irreparable in nature.

 The Court also concludes that with respect to this conduct of Defendant, Plaintiff has satisfied the remaining three elements of the *Saco Defense* test. Plaintiff's injury clearly outweighs, in effect, any injury that Defendant will sustain as a consequence of the granting of preliminary injunctive relief. Plaintiff is entitled to the confidentiality of the documents. Plaintiff has made, in addition, a persuasive demonstration that it is likely to succeed ultimately on the merits of its claims that Defendant is in breach of his contractual commitment to Plaintiff under the Trainee Agreement with respect to his use and possession of the documents. Defendant has no right to the documents or their contents, and it is highly likely, in the view of the Court, that his possession and use of them will ultimately be found to be unlawful. To require that he immediately terminate his injurious and probably unlaw-

ful possession and use of the documents inflicts no cognizable injury whatever upon him.

Finally, the public interest will not be adversely affected by the granting of preliminary injunctive relief because such relief simply enforces the contractual rights of the parties and has no negative effect discernible to the Court upon any public interest, if any exists, in the present controversy. If anything, the relief will further the public confidence in the enforceability of valid private contractual commitments.

Hence, Plaintiff has demonstrated a basis for preliminary injunctive relief in the nature of a temporary restraining order to prevent further irreparable injury to itself and its clients that is likely to occur before counsel can be heard on the merits of a preliminary injunction as a result of Defendant's use and possession of the documents in question. A temporary restraining order framed to accomplish that result will issue forthwith.

### III.

 With respect to Plaintiff's claim for preliminary injunctive relief as to Defendant's alleged conduct in soliciting customers of Plaintiff, the Court is satisfied from a careful review of the cases that Plaintiff has failed to make a showing of irreparable injury that is cognizable under the existing law of this district and circuit. Plaintiff's claim for such relief rests upon the assertion of loss of goodwill and business reputation and other elements of damage that will be "unascertainable," "incalculable," Affidavit of David Snow at 11 (Docket No. 3), or "impossible to measure ... with any reasonable degree of certainty." Plaintiff's Motion at 12 (Docket No. 2).[2] Plaintiff relies on a large panoply of cases, mostly involving similar actions in other federal districts and state courts (other than Maine), seeking enforcement of this same, or a similar, broker's employment agreement. The Court has studied those

---

**2.** Plaintiff also claims irreparable injury resulting from the encouragement other brokers may take from Defendant's conduct, if unrestrained, to engage in similar conduct themselves, thus destabilizing Plaintiff's office security and management and causing loss of other personnel. No materi-

al of evidentiary quality is put forth in support of the motion that shows, even remotely, that there is, *in fact*, any prospect of such a result being precipitated by Defendant's conduct. The Court rejects this assertion as an unfounded speculation of Mr. Snow and Plaintiff's counsel.

cases, and other cases, carefully. They are not binding precedent on this Court.[3] In most of them, no reasoned consideration is given to the proposition that the difficulty of ascertaining or computing damages, that are in theory available at law for the redress of the questioned conduct, justifies the conclusion that the subject injury is "irreparable" for purposes of invoking the equitable jurisdiction of the Court in issuing preliminary injunctive relief. Those cases are, for that reason, of no persuasive value to the Court in this case, where that proposition is the very foundation of Plaintiff's claim for such relief in respect to Defendant's solicitation conduct. Other cases, such as *Green, Bradley,* and *Stidham,*[4] appear to accept the proposition in question. The Court finds the reasoning of those cases to be unpersuasive and, in fact, in conflict on the point with the law of this district and the guidance that can be drawn from the United States Supreme Court's decision in *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). The Court declines to follow these cases and others of similar vein.

The United States Supreme Court confronted in *Sampson* an "intimation" of the Court of Appeals below "that either loss of earnings or damage to reputation might afford a basis for a finding of irreparable injury and provide a basis for temporary injunctive relief." *Sampson,* 415 U.S. at 89, 94 S.Ct. at 952. The Court "disagreed" with that intimation. It said:

> Assuming for the purposes of discussion that respondent had made a satisfactory showing of loss of income and had supported the claim that her reputation would be damaged as a result of the challenged agency action, we think the showing falls *far short* of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case.

*Id.* at 91–2, 94 S.Ct. at 953 (emphasis added). The Court's predicate for its holding was citation to language in the opinion in *Virginia Petroleum Jobbers Association v. FPC,* 259 F.2d 921 (D.C.Cir.1958). The language quoted by the Court is instructive:

> The key word in this consideration is *irreparable.* Mere injuries, however substantial in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The *possibility* that adequate compensatory or other corrective relief will be available at a later

---

**3.** Plaintiff has submitted to the Court an indexed compendium of 106 opinions and orders where a court has previously granted preliminary injunctive relief enforcing the terms of the same broker employment contract at issue here or one very similar to it. In 89 of those cases, Merrill Lynch was the plaintiff seeking injunctive relief. The Court's current computer research shows that all but 5 of those opinions and orders are unpublished. The law of this circuit is that the Court may not cite or rely upon unpublished opinions. *Bachelder v. Communications Satellite Corp.,* 837 F.2d 519, 523 n. 5 (1st Cir.1988). Although this Court has fulminated against the breadth of this rule, *People's Heritage Savings Bank v. Recoll Management,* 814 F.Supp. 159, 163 n. 8 (D.Me. 1993); *McKenney v. Sullivan,* 743 F.Supp. 53, 58 n. 3 (D.Me.1990), the Court has followed the rule. *Doucette v. Sullivan,* 785 F.Supp. 1056, 1061 n. 10 (D.Me.1992); *Fowler v. Boise Cascade Corp.,* 739 F.Supp. 671, 676 n. 9 (D.Me.1990); *John J. Nissen Baking Co. v. New England Teamsters Pension Fund,* 737 F.Supp. 679, 682 n. 3 (D.Me.1990); *United States v. Luna,* 734 F.Supp. 552, 554 n. 4 (D.Me.1990).

Accordingly, the Court may not here cite or rely on those 89 unpublished opinions. The Court has carefully studied the five published opinions and is unpersuaded by them.

**4.** *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Green* (unpublished), slip op., W.D.Wash., Nov. 2, 1993; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1054 (4th Cir.1985); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham,* 658 F.2d 1098, 1102 n. 8 (5th Cir. 1981).

The court states in *Stidham* that "[t]he injury here is such that damages could not adequately compensate. Were defendants permitted by law to exploit the clientele of their former employers, every investment that reasonably flowed from the exploitation should be included in the damages award. How such a figure would be arrived at escapes us." *Id.* at 1102 n. 8. This Court will simply say that the determination of such reasonable damages flowing from other investments obtained as a result of the objectionable conduct certainly is not inconceivable to *this* Court. The profligacy with which discovery devices can now be employed to ferret out the information necessary to make that computation is well known in the practice of this Court. This Court simply cannot believe that the *Stidham* court's conclusion is valid in the present status of discovery practice.

date, in the ordinary course of litigation, *weighs heavily against a claim of irreparable harm.*

*Id.* at 925 (first emphasis in original; second and third emphases added).

█ Thus, the controlling law has established that the availability of money damages at law in the future cuts heavily against a conclusion that the injury which would call forth such an award is irreparable in nature. This is because it is thereby established that there is an alternative to equitable intervention: an adequate remedy at law. *See Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981). The best reasoned cases have clearly held that the difficulty of determining the amount of such an award does not impugn the *adequacy* of the damages remedy at law. In *O'Donnell Construction Co. v. District of Columbia,* 762 F.Supp. 354 (D.D.C.1991), the court confronted the argument, *inter alia,* that "it would be difficult to prove money damages," *id.* at 369, and that this made the injury irreparable. The court rejected that construct in reliance on an Eleventh Circuit case. In that latter case, the court was faced with a district court holding that "financial hardship with difficult damage calculations may occur to plaintiff:..." unless the objected to conduct was restrained. *Northeastern Florida Chapter of Association of General Contractors v. City of Jacksonville, Florida,* 896 F.2d 1283 (11th Cir.1990). The Court there observed: "Conjecture about a possibility of difficulties with damage computation is inadequate to support an injunction before trial." *Id.*[5]

This Court has held many times in unpublished memoranda and in *McDonough v.*

*United States Department of Labor,* 646 F.Supp. at 482, that "economic harm in and of itself is not sufficient to constitute irreparable injury." This principle is consistent with the musings of the Court of Appeals for the First Circuit. *McDonough v. Trustees of University System of New Hampshire,* 704 F.2d 780, 784 n. 2 (1st Cir.1983) ("[w]e note only that because money damages would seem to offer a complete remedy, the requirement of irreparable injury would also be a formidable obstacle to the grant of a preliminary injunction."). These musings bear full-grown fruit in *Foxboro Co. v. Arabian American Oil Co.,* 805 F.2d 34 (1st Cir.1986). There, the court dealt with a contract-based dispute in which the district court had granted a preliminary injunction to prevent the honoring of an international letter of credit. *Id.* at 35. The circuit court reversed that action on a finding of clear error, noting:

> The principal legally cognizable injury to Foxboro is that it will have to seek recovery of these sums [represented by the letter of credit] through the contractually agreed upon forum. We do not find irreparable injury *where only money is at stake* and where the plaintiff has a satisfactory remedy at law to recover the money at issue.

*Id.* at 36 (emphasis added).[6] In a similar vein, the Court has indicated that a claim of irreparable injury based on an assertion that damages are "not readily susceptible of calculation and likely would not be recovered from the defendants," *Public Service Co. of New Hampshire v. Town of West Newbury,* 835 F.2d 380, 382 (1st Cir.1987), is to be closely scrutinized. There, the court held that the prospects for irreparable injury

---

**5.** Here, as in *General Contractors,* there is no material of evidentiary quality to establish that future damage computations will, in fact, be difficult, much less be incapable of discernment or calculation, except the conclusory suggestion of counsel in brief to that effect and the unfounded speculation and assertion of Mr. Snow in his affidavit.

In fact, the Complaint itself includes rather precise figures as to how many accounts Defendant was exposed to during his employment, the amount of assets represented by these accounts, and the precise dollar amounts of commissions generated annually by these accounts. Plaintiff's Complaint (Docket No. 1) ¶ 13. These figures, at the least, set out discernible parameters for discovery as to the extent of damage incurred by

Merrill Lynch on account of Defendant's alleged misconduct.

**6.** The Court distinguished *Itek Corp. v. First National Bank,* 730 F.2d 19 (1st Cir.1984), in which it affirmed a preliminary injunction preventing the honoring of an international letter of credit where the tumult of the Iranian revolution prevented recourse to any existing legal system in Iran to enforce against defendant's rights theoretically available to the plaintiff. *That circumstance* would render the injury irreparable. *Foxboro Co.,* 805 F.2d at 37. Here, of course, there are legal structures, both federal and state, in place in which Plaintiff may litigate *ad infinitum* any of its claims for money damages.

were speculative. Said the court, "[s]peculative injury does not constitute a showing of irreparable harm." *Id.* at 383. *Cf. C–B Kenworth, Inc. v. General Motors Corp.,* 675 F.Supp. 686, 687 (D.Me.1987).

The claims of irreparable injury made by Plaintiff in respect to loss of good will and future economic injury arising from Defendant's alleged solicitation conduct are, this Court is satisfied, highly speculative in nature. Loss of good will is frequently valued and recompensed in litigation. There is shown to be no pattern of insufficiency in such damage awards or any systemic obstacles to their fruition. Likewise, claims for future economic loss of every manner and description are the very staple of civil litigation. Assiduous counsel, making vigorous use of the investigative and ample discovery tools made available in the litigation process, will surely be able to ferret out the details of any future loss sustained by Plaintiff as the result of any future wrongful solicitation of Plaintiff's customers by Defendant. It may be arduous work, requiring considerable professional expertise, but in this Court's experience, counsel seldom shrink from the opportunity to engage in long-continued and intense discovery. Plaintiff's local counsel are well known to the Court to be both competent and eager to embark with vigor and determination upon the "discovery wars." There will be no difficulty "hunting down" here the facts necessary to prove, assess, and calculate any future economic loss of the Plaintiff.[7]

Plaintiff's Motion for a Temporary Restraining Order is hereby *DENIED* in all respects except that described in Part II above. The Temporary Restraining Order there described shall issue forthwith.

So *ORDERED.*

## TEMPORARY RESTRAINING ORDER

It is hereby *ORDERED* that the Defendant, Peter C. Bishop, be, and he is hereby, *ENJOINED* and *RESTRAINED,* for reasons set forth in this Court's Memorandum of Decision on Plaintiff's Motion for a Temporary Restraining Order entered this date, from directly or indirectly, alone or in concert with any other person, entity, or firm:

Using for any purpose or further disclosing, or transmitting to any other persons, entities, or firms any and all information and data of every kind and description contained in any confidential records of Plaintiff, Merrill Lynch, Pierce, Fenner & Smith, Inc. that are within the scope of paragraphs 1 and 2(ii) of the Financial Consultant Trainee Agreement between Plaintiff and Defendant dated September 18, 1989, including, but not limited to, the names, addresses, financial information in respect to clients, or any and all other data, confidential in nature; and that any originals or copies or other reproductions thereof, in whatever form, including information stored in computer data bases or on computer discs or disc drives, of any such records now in the possession or control of Defendant Peter C. Bishop, or which by reasonable efforts he can bring under his possession and control, be returned to Plaintiff forthwith and, in no event, no later than 5:00 p.m. on December 9, 1993.

This Temporary Restraining Order shall remain in full force and effect until December 12, 1993, at 12:30 p.m. The Court *CONCLUDES* that there is no need for Plaintiff to give bond pursuant to Federal Rule of Civil Procedure 65(c), the Court *FINDING* that there is no likelihood of Plaintiff becoming liable for costs or damages incurred or suffered by Defendant as a result of being wrongfully enjoined or restrained herein.

---

7. In the temporary restraining order proposed by Plaintiff to the Court, it is provided that the parties be ordered to proceed forthwith to arbitration of the merits of Plaintiff's claims. The *ad damnum* of the Complaint seeks such relief. The Complaint alleges no facts in support of this claim, however. The memorandum of Plaintiff in support of the pending motion is wholly silent on the matter of arbitration. Nowhere is a showing made that Plaintiff's claims are subject to any legal requirement of submission to arbitration. Thus, any claim of entitlement to arbitration of Plaintiff's claims is treated by the Court, for present purposes, as waived by failure to pursue it in the supporting papers.