**RENCOR CONTROLS, INC., Plaintiff**

v.

**John STINSON, Terry Ingram, and Allagash Valve & Controls, Inc., Defendants**

**No. CIV. 02–185–P–C.**

United States District Court, D. Maine.

Oct. 30, 2002.

Daniel J. Mitchell, Esq., Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Plaintiff.

John J. Wall, III, Esq., Monaghan, Leahy, Hochadel & Libby, Timothy J. Bryant, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Defendants.

## MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

GENE CARTER, District Judge.

Plaintiff Rencor Controls, Inc. ("Rencor") filed a Complaint against Defendants

John Stinson, Terry Ingram, and Mr. Ingram's newly formed company, Allagash Valve & Controls, Inc. ("Allagash Valve") on August 20, 2002, alleging misappropriation of trade secrets, unfair competition, unjust enrichment, breach of fiduciary duty, and defamation.[1] *See* Complaint (Pleading No. 1). On that same day Plaintiff filed a Motion for Temporary Restraining Order based on the allegation that Defendants had misappropriated a trade secret. (Pleading No. 3). *See also* Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunctive Relief and a Temporary Restraining Order (Pleading No. 4) at 1. The motion was granted by this Court on September 16, 2002 (Pleading No. 6); the Court granted one extension of the Temporary Restraining Order on September 25, 2002 (Pleading No. 8), before it expired on October 5, 2002. Presently before the Court is Plaintiff's Motion for Preliminary Injunction. (Pleading No. 2).

## I.

Plaintiff Rencor is in the business of distributing control valves and automated valves to manufacturers in the northeastern United States for various types of industrial applications. In an effort to boost its competitive edge, Rencor developed a unique computer program and database (the "Rencor Software" or "Software") containing customer, pricing, sales, product inventory, distribution, and delivery information. Defendant Stinson was an outside sales representative for Rencor and was responsible for serving various Rencor accounts in Maine. As part of his position as an outside sales representative, Rencor provided Defendant Stinson with a copy of the Rencor Software, which was loaded by Rencor onto a personal laptop computer for use by Mr. Stinson personally in the course of his sales-related activities. Defendant Ingram was also an outside sales representative for Rencor, and he later became an officer and director of Rencor. In the course of Defendant Ingram's duties, Rencor also provided him with a copy of the Rencor Software for his use.

In January 2002, Defendant Ingram resigned from Rencor and shortly thereafter formed Allagash Valve, a company that competes directly with Rencor in distributing industrial valves to various manufacturers in the northeastern United States. At the time of his departure, Rencor prevented Mr. Ingram from downloading and/or otherwise taking with him a copy of the Rencor Software. In August of 2002, Patrick Herlihy, the President of Rencor, learned that Defendant Stinson had gone to work as an outside sales representative for its competitor, Allagash Valve. At this time, Mr. Herlihy demanded that Defendant Stinson return to Rencor the Rencor Software, but Defendant Stinson did not then comply with that request.

Plaintiff has alleged various instances where it believes it has lost business to Allagash Valve based on the Defendants' misappropriation of the Rencor Software. It points to one instance where Allagash Valve provided a lower, but nearly identical, price quote to a customer which proceeded to accept the lower Allagash Valve quote. Plaintiff described such a small variation in price quotes to be "highly unusual in the valve distribution business." Affidavit of Patrick Herlihy, attached as Exhibit 7 to Motion to Extend Temporary Restraining Order with Incorporated Memorandum of Law (Pleading No. 7) ¶ 5. To buttress this misappropriation allegation, Plaintiff reported that only a year ago, it had learned that the price of the product sold by Allagash Valve in this

---

1. The defamation count is filed only against Defendant Ingram.

instance was 35% higher than that of the product being offered by Plaintiff. *Id.* ¶ 6.

Since Defendant Stinson has begun doing work for Allagash Valve, Plaintiff cites two instances where Defendants outbid Rencor and sold competing valve and control products to customers of Rencor whose accounts had previously been handled by Defendant Stinson when he was a sales representative working on behalf of Rencor. *See* Affidavit of Patrick Herlihy (Pleading No. 18) ¶ 12. Although Plaintiff was unable to learn the specific price quotes given by the Defendants to these customers, Plaintiff asserts that "the pricing information and costs of Rencor contained in the Rencor Software certainly would have given the Defendants the entire history of price quotes that Rencor ever gave to these customers, as well as the prices paid by Rencor for its competing valve and control products." *Id.* Lastly, Plaintiff learned, through discussions with a customer, of another specific instance where Allagash Valve, through Defendant Stinson, had quoted a lower price to the customer for a competing product. *See id* ¶ 13.

Plaintiff alleges that Defendant Stinson has misappropriated a trade secret of Rencor by disclosing and/or using the Rencor Software without the consent of Rencor. *See* Complaint ¶ 37. Plaintiff alleges that Defendants Ingram and Allagash Valves have misappropriated a trade secret of Rencor by acquiring and using the Rencor Software without the consent of Rencor. *See* Complaint ¶ 38.

The Temporary Restraining Order issued by this Court on September 16, 2002, temporarily enjoined Defendants from using, copying, transferring, opening, or operating in any manner the Rencor Software or any information Defendants may have acquired from the software. *See* Order on Plaintiff's Motion for a Temporary Restraining Order (Pleading No. 6) at 5 [hereinafter TRO]. The TRO further ordered that Defendants return immediately any and all copies of the Rencor Software that may be in their possession, as well as any data or information they may have transferred from the Rencor Software to any other medium. *See id.* Lastly, the TRO held that Defendants were temporarily enjoined from hiring Defendant Stinson in order to protect the trade secret information contained in the Rencor Software. *See id.* Plaintiff now requests that a preliminary injunction be issued on these grounds. Because Defendants have already complied with the portion of the TRO ordering them to return the Rencor Software and any information gleaned from the software,[2] *see* Affidavit of Daniel Mitchell, Esq., (Pleading No. 23) ¶ 3; Affidavit of John Wall, Esq., (Pleading No. 24) ¶ ¶ 3–6; Affidavit of Terry Ingram (Pleading No. 25) ¶ 3, the present order addresses only the Plaintiff's request to enjoin Mr. Stinson from working for Allagash Valve until March of 2003. Based on a review of the papers submitted by the parties in this matter, the Court will deny Plaintiff's Motion for a Preliminary Injunction.

---

**2.** Defendant Stinson's attorney explained that he has retained a copy of the Software in his files for purposes of the litigation, and that he so advised Plaintiff's counsel. Wall Affidavit ¶ 3. He further advised Plaintiff's counsel that his client, Defendant Stinson, may have copies of quotes and invoices that were created using the Software or information from the Software in his customer files. Plaintiff's counsel has not objected to Defendant Stinson's attorney's retention of the Software for his files, nor has he indicated that the quotes and invoices in possession of the Defendant were the type of "transferred data or information" that is the subject of the TRO. *Id.* ¶ 4. The Court concludes from this that all parties are in agreement that the portion of the TRO ordering the return of the Rencor Software and all related information has been fully complied with.

## II.

In order to award preliminary injunctive relief, four well-established requirements must be met. The Court must find:

(1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which the granting of injunction relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the motion.

*Merrill Lynch v. Bennert,* 980 F.Supp. 73, 74 (D.Me.1997).

The third factor, that of the likelihood of success on the merits, has been held to be the threshold criteria. *See American Society of Consultant Pharmacists v. Concannon,* 214 F.Supp.2d 23, 26 (D.Me.2002). The likelihood of success on the merits is "[t]he sine qua non of this four-part inquiry," with the remaining factors becoming only "matters of idle curiosity" if the moving party cannot demonstrate that he is likely to succeed with his claim. *New Comm Wireless Services v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir.2002). However, the Court need not decide whether the Plaintiff in this case can make this threshold showing; even if it can, based on the record before the Court, the Plaintiff has not shown that it meets the requirement of demonstrating that it will suffer irreparable injury if Defendant Stinson is not enjoined from working for Allagash Valve.

Plaintiff has the burden of proving that irreparable harm would result from a denial of injunctive relief. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 18 (1st Cir.1996). As this Court enunciated in *Merrill Lynch v. Bishop,* 839 F.Supp. 68, 70 (D.Me.1993),

[i]n order to make a suitable showing of irreparable injury, the moving party must establish a colorable threat of immediate injury, *see Massachusetts Coalition of Citizens With Disabilities v. Civil Defense Agency,* 649 F.2d 71, 74 (1st Cir.1981), and the absence of any adequate remedy at law for such injury. *McDonough v. United States Department of Labor,* 646 F.Supp. 478, 482 (D.Me.1986). Finally, where economic damages are the injury relied upon, it is to be remembered that economic harm, in and of itself, is not sufficient to constitute irreparable injury.

The Court has broad discretion in evaluating whether the alleged harm is irreparable in nature. *K–Mart Corp. v. Oriental Plaza, Inc.* 875 F.2d 907, 915 (1st Cir. 1989).

In this case, Plaintiff claims an injunction preventing Allagash Valve from hiring Defendant Stinson until March 1, 2003, is necessary to prevent "the harm that inevitably will arise if Mr. Stinson is permitted to take his knowledge of Rencor's pricing architecture, which Mr. Stinson acquired through his use of the Rencor Software, with him to Allagash Valves." Reply Memorandum of Plaintiff to Defendants' Joint Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (Pleading No. 17) at 6 [hereinafter Plaintiff's Reply Memorandum]. The Court does not agree that such harm would be an "inevitable" result of Defendant Stinson's employ at Allagash Valve. First and foremost, Defendants have filed with the Court affidavits swearing that, pursuant to the Court's Temporary Restraining Order, they have returned any and all copies of the Rencor Software that they possessed, as well as any data or information they may have transferred from the Rencor Software to any other medium.[3] *See* Affi-

---

**3.** That is, with the exception of the Software copy retained by Defendant Stinson's counsel, as well as the quotes and invoices in Defendant Stinson's customer files, the retention of which Plaintiff has not contested. *See supra* note 2.

davit of John Wall, Esq. (Pleading No. 24) and Affidavit of Terry Ingram (Pleading No. 25) ¶3. This Software is said to contain a database of Rencor's confidential pricing and customer data. Certainly if Defendant Stinson were permitted to maintain possession of this Software and share its contents with Allagash Valve, a colorable claim could be made that irreparable harm to Rencor would result—that armed with such information, Defendants could "anticipate Rencor's pricing and gain an unfair advantage over it in the distribution marketplace." Plaintiff's Reply Memorandum at 7. However, without the use of the Software that contains all of this information, the Court is not convinced that Defendant Stinson's work as an outside sales representative for Allagash Valve would result in irreparable harm to the Plaintiff Rencor.[4]

An "injunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." *Bishop*, 839 F.Supp. at 70 (*quoting Plain Dealer Publishing Co. v. Cleveland Type. Union No. 53*, 520 F.2d 1220, 1230 (6th Cir.1975), *cert. denied*, 428 U.S. 909, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976)). Furthermore, "a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm." *Ross–Simons*, 102 F.3d at 19 (*citing Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6–7 (1st Cir.1991); *Public Serv. Co. v. Town of W. Newbury*, 835 F.2d 380, 383 (1st Cir.1987)). Without access to the actual Software containing the alleged trade secret information, the Court finds to be speculative the possibility that any knowledge that Defendant Stinson might retain regarding Plaintiff's "pricing architecture" would inevitably result in irreparable harm to the Plaintiff.

This is especially so given this Court's well-established position that "the availability of money damages at law cuts heavily against a conclusion that the injury which would call forth such an award is irreparable in nature." *Bishop*, 839 F.Supp. at 74. If Plaintiff can indeed learn through discovery and prove at trial that Defendants did at one time possess

---

4. The Court also notes at this point that Defendant was at no time subject to a non-compete agreement with Plaintiff. Plaintiff insists that Defendant Stinson was not free to work for competing industrial valve and control distributors so long as he intended to maintain his representation of Rencor, Plaintiff's Reply Memorandum at 4. However, the Court would interpret the terse e-mail sent by Rencor President Patrick Herlihy to Defendant Stinson on March 25, 2002, to mean that Defendant no longer represented Rencor:

> [e]ffective immediately Rencor Controls is terminating existing relationship. All accounts you presently call we revert back to Rencor. You will be paid for Brayton Point order. You will be paid for Solutia order for Samson/KTM Valves. If you are working on something specific quote [sic] we will honor that quote for 30 days, you must advise us these quotes [sic] by tomorrow in writing[.]

*See* e-mail attached to Defendant Terry J. Ingram's and Defendant Allagash Valve & Controls' Opposition to Plaintiff's Motion to Extend the Court's September 16th Temporary Restraining Order (Pleading No. 9). Therefore, as of March 25, 2002, Defendant Stinson no longer worked for Rencor and was not bound by any written non-compete agreement upon leaving its employ. Although this *does* not then give him the right to misappropriate trade secrets of Rencor, it provides even less ground to restrain Defendant's pursuit of his livelihood upon leaving his current position with Rencor. *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir.1995) ("[Trade secret law] should not prevent workers from pursuing their livelihoods when they leave their current positions.") The Court further notes that given the aforementioned e-mail, it does not accept Plaintiff's argument that it believed that Defendant may have been performing additional sales for it up until it learned of his work for Allagash Valve in August 2002.

and/or use the Rencor Software, then money damages would be an appropriate remedy. Plaintiff can calculate its damages by quantifying any business it lost to Allagash Valve due to the latter's possession and use of the Rencor Software. Because Defendants are no longer in possession of the Software, the Court is not prepared to find, without more, that any knowledge Defendant Stinson retains in his head with regard to Rencor's pricing architecture is such that would irreparably harm Rencor.[5]

In *Bishop*, this Court pointed to language quoted from *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958) by the Supreme Court in the case *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974):

> The key word in this consideration is *irreparable*. Mere injuries, however substantial in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Any past use of information from the Rencor Software can be compensated with money damages. Further, by all accounts neither Defendant is currently or will be in the future in possession of the software; therefore, there is no continuing or future threat of harm. For these reasons the Court finds that an injunction forbidding Defendant Stinson from working for Defendant Allagash Valve is not warranted.

5. The Court does not have any reason at this point to disbelieve the sworn statements of Defendants that they have turned over to Plaintiff the Software and any and all information derived from it. If through discovery Plaintiff learns otherwise, then that will be

Plaintiff's Motion for Preliminary Injunction is hereby **DENIED**.

So **ORDERED**.

another matter for trial. Even though Plaintiff has not prevailed at the pretrial stage in a showing of irreparable injury, it "may nonetheless win the war at a succeeding trial on the merits." *Narragansett Indian Tribe*, 934 F.2d at 6.