**MERRILL LYNCH, PIERCE, FENNER & SMITH, Plaintiff**

v.

**Jeffrey BENNERT, Defendant.**

**No. CIV. 97–314–P–C.**

United States District Court,
D. Maine.

Nov. 3, 1997.

George J. Marcus, Stephen G. Grygiel, Marcus, Grygiel & Clegg, P.A., Portland, ME, for Plaintiff.

James G. Goggin, Roger Clement, Esq., Michael Joseph Gartland, Verrill & Dana, Portland, ME, for Defendant.

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

GENE CARTER, District Judge.

Plaintiff Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") filed a Complaint seeking injunctive relief against Defendant Jeffrey Bennert (Docket No. 1) and an accompanying Motion for a Temporary Restraining Order (Docket No. 2) on October 17, 1997. Following oral argument and review of the papers supporting Plaintiff's Motion for a Temporary Restraining Order, the Court issued an Interim Memorandum of Decision Granting in Part and Denying in Part Plaintiff's Motion for a Temporary Restraining Order on October 30, 1997. This Memorandum sets forth the Court's rationale.

### I.

Plaintiff alleges that Defendant breached an employment agreement in which he agreed "not to divulge or disclose [confidential Merrill Lynch] information to any third party [or] reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter." Financial Consultant Employment Agreement and Restrictive Covenants ¶ 1 ("Agreement"). Defendant further agreed that "for a period of one year following my termination I will not solicit . . . any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office or in any capacity." *Id.* ¶ 2.

Plaintiff alleges that Defendant violated the provisions of the Agreement by conduct including the removal of documents and information from Merrill Lynch, the transmission of such information to a competitor, Tucker Anthony, Inc. ("Tucker Anthony"), and the solicitation of Merrill Lynch clients. *See Complaint* ¶ 21. Plaintiff asserts irreparable injury in the form of

a) Disclosure of trade secrets, customer lists, and other confidential information which is solely the property of Merrill Lynch and its clients;

b) Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

c) Loss of personnel and threat to office stability;

d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

*Id.* ¶ 26. Plaintiff further asserts that it has no adequate remedy at law. *See id.* ¶ 27.

### II.

In *Merrill Lynch, Pierce, Fenner & Smith v. Bishop,* 839 F.Supp. 68, 70 (D.Me. 1993), the Court reiterated the well-established requirements for preliminary injunctions. To award preliminary injunctive relief,

[t]he Court must find: (1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which the granting of injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the motion.

*Id.* (citations omitted). These requirements extend to requests for temporary injunctive relief.

*Id.* (citations omitted). In *Bishop,* the Court elaborated upon the element of irreparable injury:

In order to make a suitable showing of irreparable injury, the moving party must

establish a colorable threat of immediate injury, *see Massachusetts Coalition of Citizens With Disabilities v. Civil Defense Agency,* 649 F.2d 71, 74 (1st Cir., 1981), and the absence of any adequate remedy at law for such injury. *McDonough v. United States Department of Labor,* 646 F.Supp. 478, 482 (D.Me.1986). Finally, where economic damages are the injury relied upon, it is to be remembered that economic harm, in and of itself is not sufficient to constitute irreparable injury. *Id.* .Bishop, 839 F.Supp. at 70.

In its Motion for a Temporary Restraining Order, Plaintiff seeks two forms of injunctive relief. First, Plaintiff requests that Defendant be ordered to return to Plaintiff any and all information pertaining to Merrill Lynch customers and to refrain from further using or disclosing such information. The Court has granted this relief and issued a Temporary Restraining Order to that effect pursuant to the principles of *Bishop. See id.* at 71 ("Clearly the continuing use and disclosure of such records by Defendant will cause an injury to Plaintiff (as well as to Plaintiff's protected clients) for which there is no adequate remedy at law."). Second, Plaintiff requests that Defendant be enjoined from soliciting certain clients of Plaintiff's. For the reasons set forth below, the Court denies this request because Plaintiff has failed to demonstrate the requisite irreparable injury with respect to Defendant's alleged solicitation of Plaintiff's clients.[1]

In *Bishop,* Merrill Lynch sought identical injunctive relief against a broker who had recently left Merrill Lynch for Tucker Anthony. *See id.* at 71. In applying the principles of *Bishop* to the merits of this case, the Court determines that no showing of irreparable injury has been made by Plaintiff. Plaintiff advances several arguments in an attempt to distinguish this case from *Bishop.*

First, Plaintiff asserts that Defendant is the fifth in a succession of brokers to leave Merrill Lynch's employment for that of Tucker Anthony. Plaintiff argues that the defendant in *Bishop* was the first broker to do so, and that since then, a pattern of Tucker Anthony inducing brokers away from Merrill Lynch in violation of their employment contracts has emerged. *See* Ward Aff. ¶¶ 14, 24. However, it is unclear from the evidence in the record why the other brokers left Merrill Lynch or whether their conduct in doing so violated their employment contracts.[2] The departure of five brokers within a period of four years does not constitute a concerted plan on Tucker Anthony's part. Moreover, even if Plaintiff's contention was shown to be true, it does not mean that the harms associated with the departing brokers' conduct are without adequate remedy at law. It simply necessitates some type of mathematical aggregation of the type of damages found to be ascertainable in *Bishop. See id.* at 75. Merrill Lynch asserts that the loss of prospective clients caused by the exodus of multiple brokers to Tucker Anthony is incalculable. However, the Court is confident that any damages caused by this phenomenon could be calculated by evidence of the past history of the earnings on the accounts and expert testimony.

Plaintiff's second argument is that the employment contract in this case differs ma-

---

1. The evidence offered by Plaintiff indicates that Defendant contacted a substantial number of Merrill Lynch clients by mail using information derived from Merrill Lynch records removed by Defendant upon his departure from Merrill Lynch. Michaelian Aff. ¶ 3. At oral argument, Defendant's counsel represented that Defendant sent forty-four mailings to former clients and that thirty-six responses had been received; defense counsel was unable to offer any information as to the nature of the responses. Plaintiff has also submitted copies of two Tucker Anthony forms which Plaintiff alleges purport to transfer client accounts from Merrill Lynch to Tucker Anthony. Significant portions of these documents are illegible. Moreover, the Court does not find, based on the legible sections of the documents, that the Merrill Lynch *clients* have requested transfer of any portion of their accounts. Therefore, there is no reliable evidentiary predicate to conclude on the record before the Court that any client actually has left Merrill Lynch in favor of Tucker Anthony as a result of Defendant's conduct.

2. The affidavit of a Merrill Lynch executive states that Tucker Anthony hired three brokers away from Merrill Lynch between Bishop and Defendant. *See* Ward Aff. ¶ 8. The affidavit further states that these three brokers took confidential Merrill Lynch records with them and subsequently solicited Merrill Lynch clients. *See id.* ¶ 14. It is unclear to the Court that this affiant has personal knowledge of these events.

terially from that of Bishop. Plaintiff asserts that Defendant consented to a finding of irreparable injury and subsequent injunctive relief in the event that the conduct in question occurred.[3] The Court notes that for operative purposes, the employment agreement in Bishop also involved a consent to injunctive relief. Assuming that the additional contractual provision, agreeing to a conclusion of irreparable injury in these circumstances, makes this case materially different from Bishop, it is against public policy to allow the parties to abrogate by contract a public policy-based limitation upon the exercise of the Court's equitable jurisdiction. Parties cannot insulate their requests for equitable relief from court scrutiny by the applicable standards "simply by including a stock phrase or clause that says either the employee cannot challenge it or that the employee recognizes the importance of the employer's interest." Roto–Die Co. v. Lesser, 899 F.Supp. 1515, 1519 (W.D.Va.1995) (holding that defendant was not estopped from challenging the validity of a covenant not to compete because the agreement included a waiver of the right to assert that the covenant is illegal or unenforceable).

Furthermore, public policy counsels against use of the Court's equitable powers for injunctive relief in the absence of irreparable harm. This Court has stated that it must "bear constantly in mind that an '[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.'" Saco Defense System Div., Maremont Corp. v.

Weinberger, 606 F.Supp. 446, 449 (D.Me. 1985) (quoting Plain Dealer Pub. Co. v. Cleveland Typographical Union No. 53, 520 F.2d 1220, 1230 (6th Cir.1975)). Public policy demands that the Court make an independent determination of irreparable harm, rather than blindly accept the parties' conclusion as manifested in the Agreement.

Finally, Merrill Lynch expresses concern that the "real world" interpretation of Bishop has led to inappropriate results. However, the Court is convinced that Bishop is not being thwarted; instead Bishop merely requires plaintiffs in Merrill Lynch's position to wait a little longer for the proper recompense. Merrill Lynch is impatient with the workings of the judicial system, but this alone does not indicate that the principles of Bishop are being frustrated.[4]

In conclusion, the Court has determined that Merrill Lynch has failed to make a showing of irreparable injury in its claim for injunctive relief against Defendant's solicitation of its clients. The Court does not find that the facts of this case merit departure from the principles announced in the Bishop case, and thus Plaintiff's Motion for a Temporary Restraining Order is **GRANTED IN PART** and **DENIED IN PART** as set forth in the Interim Memorandum of Decision Granting In Part and Denying In Part Plaintiff's Motion for a Temporary Restraining Order dated October 30, 1997.

---

3. Paragraph 4 of the Agreement provides in part:
   In the event I breach any of the covenants [contained herein], I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY OR PERMANENT INJUNCTION ordering
   (a) that I immediately return to Merrill Lynch all records . . . ; and
   (b) that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name be-

came known to me while employed by Merrill Lynch . . . ; and
   (c) that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation [of this agreement].

4. At oral argument, Merrill Lynch represented that it has agreed to submit to arbitration when it seeks injunctive relief through the judicial system. The Court is unable to determine the effect of this compulsory submission to arbitration. Indeed, it may mitigate the problems of delay and recovery of damages of which Merrill Lynch complains. Furthermore, it indicates that Merrill Lynch perhaps may be more adept at arriving at a figure for its damages that it would have the Court believe.