**AMERICAN EXPRESS FINANCIAL ADVISORS INC. and IDS Life Insurance Company, Plaintiffs**

v.

**William TEMM, Michael Reid, Bruce Sawyer and Andrew Stickney, Defendants**

**No. CIV. 03–17–P–H.**

United States District Court, D. Maine.

Jan. 22, 2003.

Robert E. Mittel, Esq., Mittel, Asen, Hunter & Cary, LLC, Portland, ME, for American Express Financial Advisors Inc., IDS Life Insurance Company, plaintiffs.

John C. Lightbody, Esq., Christopher B. Branson, Esq., Murray, Plumb & Murray, Portland, ME, for William Temm, Michael L Reed, Bruce Sawyer, Andrew Stickney, defendants.

## ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER

HORNBY, District Judge.

■ The four defendants were employees, then independent contractors, then franchisees of American Express Financial Advisors Inc.[1] They have now left that organization and have gone to a competitor. American Express seeks a temporary restraining order to stop the defendants from having access to their former customers or using a former telephone number.[2] The agreement in question is subject to NASD arbitration, but American Express seeks injunctive relief prior to that arbitration. The four part test is well known.

> To award preliminary injunctive relief, [t]he Court must find: (1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which the granting of injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the motion.

1. After becoming an independent contractor, the defendant Bruce Sawyer transformed his affiliation with American Express back to an employee and then to a franchisee. Compl. ¶¶ 62–63 (Docket No. 1).

2. The plaintiffs, American Express and IDS Life Insurance Company (together, "American Express"), filed a complaint seeking injunctive relief against the four defendants and an accompanying motion for a temporary restraining order (Docket No. 2) on January 16, 2003. I heard oral argument on the motion on January 21, 2003.

*Merrill Lynch, Pierce, Fenner & Smith v. Bennert,* 980 F.Supp. 73, 74 (D.Me.1997) (citations omitted); *see also Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996). I DENY the motion based upon the degree of likelihood of success on the merits and the lack of irreparable injury.

The agreement (it is the same for each of the four defendants[3]) provides a way for the franchisees to leave the American Express organization without running afoul of the prohibition on access to former customers. American Express argues that the defendants have violated three important provisions, however: (1) no recruitment or solicitation of others to leave the American Express organization; (2) no use of their former telephone number; and (3) no notice to customers that they are leaving or solicitation of their business until the effective date of termination.

### RECRUITMENT/SOLICITATION OF OTHER FRANCHISEES

■ American Express's case on this point is circumstantial. Because the four defendants all left simultaneously and together, American Express infers that they must have solicited or recruited each other to leave. By individual affidavits the four defendants each deny that. I find little likelihood of success on this point. It is quite reasonable that four people working together could reach a decision to leave, one following the example of another, with no recruitment or solicitation.

**3.** I recognize that the defendant Andrew Stickney may not be able to take advantage of the rider specifying how to leave the organization because it requires more seniority than he has. Nevertheless, the irreparable injury part of the analysis leads me to the same conclusion for him as the other three defendants.

### USE OF TELEPHONE NUMBER

According to the agreement, the "Independent Advisor agrees to immediately cease using any telephone number used by Independent Advisor in the Independent Financial Advisor Business." Compl., Ex. 1, at 27. Here, the four defendants put a voice message on their previously used number that said:

> Hello, if you are trying to reach Michael Reed, Bill Temm, Bruce Sawyer, or Andy Stickney please dial 207–885–8827. Thank you.

Kondal Aff. ¶ 5 (Docket No. 4).

After this lawsuit was filed, they changed the message to:

> Hello. You have reached 207–885–8825. If you are trying to reach American Express Financial Advisors, please call 603–668–1273. If you are trying to reach Michael Reed, Bill Temm, Bruce Sawyer, or Andy Stickney, they have left American Express Companies and can be reached at 207–885–8827. Thank you.

Temm Aff. ¶ 8 (Docket No. 10).[4]

Did they immediately cease using the number by leaving the first forwarding message? Perhaps. Perhaps not. That will be for the arbitrator to determine. But the prohibition is sufficiently ambiguous in meaning in these circumstances to make American Express's temporary restraining order case weak.

**4.** Under the franchise agreement, American Express reserves the right at its expense "to add a forwarding message to any such telephone number, indicating the telephone number for [American Express] and for the departing Independent Advisor." Compl., Ex. 1, at 27. It appears that the defendants attempted to modify their message to conform to this provision.

## Notification to and Solicitation of Customers

■ The record is very unsatisfactory on this point. For American Express, I have the affidavit of Martha Kondal who was in charge of an intensive calling campaign with respect to the customers in question. She summarizes in her affidavit what she believes she learned from these customers about what the defendants did. The information is, of course, hearsay, not inadmissible for purposes of this preliminary relief, but subject to careful treatment. What is more troubling is that the specific records she refers to are capable of different interpretation, and the four defendants in their affidavits explicitly deny engaging in the prohibited activity and provide a substitute explanation for customer confusion. (Docket Nos. 10–13) Of course, their affidavits in turn are self-serving and therefore also subject to question. I would much prefer to have heard the testimony of live witnesses under oath subject to cross-examination to determine what really happened during the two-week termination process. The parties did not offer me that and, because I am in the midst of a lengthy criminal trial, I did not have the luxury of demanding it. But based upon the conflicting affidavits and weighing the specifics of the information the affiants are able to provide, I conclude that American Express has not shown a likelihood of success on this point.

## Irreparable Injury

■ Judge Carter of this District has ruled more than once on the question of irreparable injury in a dispute like this over former customers. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Bennert,* 980 F.Supp. 73 (D.Me.1997); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop,* 839 F.Supp. 68 (D.Me.1993). While issues of confidentiality and the for-

mer employer's right to its records justify injunctive relief to restore improperly taken records (not the situation here), he has also ruled clearly that money damages for lost business are available if former employees improperly solicit former customers. *Bennert,* 980 F.Supp. at 75; *Bishop,* 839 F.Supp. at 74–75. This availability "cuts heavily against a conclusion that the injury . . . is irreparable in nature." *Bishop,* 839 F.Supp. at 74. Citing *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 217 F.3d 8 (1st Cir.2000), American Express argues that the injury to its good will, relationships and morale are not easily quantifiable. American Express's reliance on *Ross–Simons* is misplaced, however. In *Ross–Simons,* the First Circuit held that the loss of a prestigious product line would cause irreparable harm to a dealer because the impact on the dealer's bridal registry (the number of couples who would register elsewhere, the disappointment to former registrants, and the harm to the dealer's image) could not be calculated. *Ross–Simons,* 217 F.3d at 13; *see also Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 19–20 (1st Cir. 1996). Here, any damages caused by the loss of customers could be calculated from consumer account records and expert testimony. I therefore conclude that American Express has an adequate remedy at law.

## Conclusion

For these reasons, American Express's motion for temporary restraining order is **Denied.**

**So Ordered.**