**UNITED STATES of America,**
**Plaintiff,**

v.

**EAST RIDGE ASSOCIATES,**
**Respondent**

**Mac–Gray Company, Inc.**
**Party–in–Interest.**

**No. CIV. 03–59–B–W.**

United States District Court,
D. Maine.

Dec. 11, 2003.

Frederick Emery, Office of the U.S. Attorney, Portland, ME, for United States of America, Plaintiff.

George J. Marcus, Michael Joseph Gartland, Marcus, Clegg & Mistretta, P.A., Portland, ME, for East Ridge Associates, Defendant.

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

WOODCOCK, District Judge.

On November 25, 2003, the Defendant, East Ridge Associates, moved for a preliminary injunction to enjoin the December 12, 2003 foreclosure sale of certain property in this matter. With the court's acquiescence, this motion has proceeded on an expedited basis. The responsive memorandum was filed on December 4, 2003 and the court is issuing this Order prior to the December 12, 2003 sale in order to accommodate the parties. For the reasons discussed below, this Court DENIES the Defendant's motion.

### I. Facts and Procedural History

In 1988, the Defendant and the Plaintiff, the United States Department of Agriculture ("USDA" or "Government"), entered into an agreement regarding the construction, mortgage, and operation of an apartment complex in Southwest Harbor, Maine, under the Multi–Family Housing Program ("MFH program"). The MFH program provides subsidized housing for low and moderate income families. Pursuant to the agreement, the Defendant executed an Instant Credit and Rental Assistance Agreement ("Instant Credit Agreement"), requiring the Defendant to operate the complex as a USDA-subsidized, low-income housing development for 20 years; a Partnership Real Estate Mortgage for Maine ("Mortgage"), giving the Government a mortgage in the complex in return for approximately $1.2 million; and, a Security Agreement, providing the Government with a secured interest in the complex.

The closing documents contained numerous references to applicable federal laws and regulations. Notably, the Instant Credit Agreement provided, "This Agreement is subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof." (Docket # 1, Ex. B, ¶ 18). The Mortgage stated:

> This instrument shall be governed by federal law and shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this instrument. . . .

(Docket # 1, Ex. C, ¶ 27), and:

> The Borrower and any successors in interest agree to use the housing for the

purpose of housing people eligible for occupancy as provided in Section 515 of Title V of the Housing Act of 1949 and FmHA regulations then extant during this 20 year period beginning the date of this mortgage.... A tenant may seek enforcement of this provision as well as the government.

(Docket # 1, Ex. C, ¶ 32). Likewise, the Security Agreement advised, "This Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions hereof." (Docket # 1, Ex. E, ¶ D).

At the time, the applicable federal regulations provided, "If a project is sold at foreclosure, the restrictive-use provisions will be added to the deed," 7 C.F.R. § 1965.90(7),[1] and, "[f]or MFH loans, the advertisement will state the restrictive-use provisions which will be included in any deed used to transfer title," 7 C.F.R. § 1955.15(f).

East Ridge failed to meet its obligations under the agreement and, on April 7, 2003, the Government filed a Complaint of Foreclosure against East Ridge. East Ridge answered the Complaint on June 9, 2003, admitting some, but not all of its allegations. On July 2, 2003, the Government moved for Summary Judgment. East Ridge failed to object or otherwise respond and, on July 28, 2003, this Court entered a Judgment of Foreclosure and Sale ("Judgment") in favor of the Government, finding the total amount due the Government on the note, mortgage and security agreement was $1,441,580.80, plus other costs and interest. The Judgment required the property to be sold at a public foreclosure sale "pursuant to the requirements of 28 U.S.C. Sections 2001, 2002, and 2004, 14

M.R.S.A. Sections 6323 [and 6324] and this Judgment." (Docket # 12, ¶ 7). The Judgment also ordered:

> Notice of said sale shall be given by publishing a Notice of Sale, in a newspaper of general circulation in Hancock County, Maine, once a week for four (4) weeks. Such notice will not be published until after the expiration of the redemption period, but not later than 90 days after the expiration of the redemption period. This sale shall be held not less than thirty (30) days nor more than forty-five (45) days from the date of first publication.

(Docket # 12, ¶ 7).

On November 6, 2003 the Government published a Notice of Sale ("Notice") in the *Ellsworth American*. The Notice provided, in part,

> [T]his property is being sold subject to Restrictive Use Provisions as follows: The borrower and any successors in interest agree to use the house for the purpose of housing people eligible for occupancy as provided in Section 515 of the Housing Act of 1968 and FmHA regulations [that exist] during this 20 year period beginning September 20, 1988 through August 21, 2006.

(Docket # 16, Ex. 1). The Government scheduled the sale for December 12, 2003.

In its November 25, 2003 Motion, the Defendant cited the Notice of Sale and complained that the Notice violated the Judgment by including the restrictive-use provision. East Ridge claimed that any sale would violate statutory and common law and be commercially unreasonable. It provided the court with an Affidavit signed by Pamela Gleichman, the President and General Partner of Gleichman & Company,

---

1. The federal regulation has since been amended. It now reads, "If a project is sold out of the program at a foreclosure sale, the restrictive-use provisions will be retained and added to the deed." 7 C.F.R. § 1965.23(b) (1993).

the general partner of East Ridge, stating that if the property were sold without the restriction, it would have a fair market value of not less than $2,000,000.00, but the property with the use restriction was worth only $275,000.00. East Ridge has argued that if the Government had attempted to impose the use restriction as part of the Judgment, East Ridge would have had the opportunity to object to its inclusion in the Judgment and either to appeal the Judgment or redeem the property during the ninety-day redemptive period with knowledge that the restriction would, by the terms of the Judgment, apply to purchasers at the public sale. East Ridge further contends that under both statutory and case law, the Judgment is the controlling document for the terms of the public sale and the Government cannot impose a condition to the public sale not authorized by the Judgment. To do so, East Ridge argues, violates the Government's obligation to conduct a commercially reasonable sale. Finally, East Ridge maintains if the sale goes through with the restriction, it will suffer irreparable injury for which it will have no viable recourse, since the Government can assert the defense of sovereign immunity to any subsequent claim for damages.

The Government has objected to the East Ridge motion. It has pointed out that all the closing documents, including the Loan Agreement, the Promissory Note, the Instant Credit Agreement, the Security Agreement, and the Mortgage itself, were specifically and expressly made conditional upon then current and future governmental regulations and that the Judgment itself makes reference to these documents, obviating the need to add specific language in the Judgment. It has quoted portions of the Code of Federal Regulations applicable to MFH loans, which make it clear that if an MFH property is sold at foreclosure, the restrictive-use provisions must be added to the deed. The Government has also argued that the federal regulations apply, regardless of whether they are expressly itemized in the Judgment.

## II. Discussion

In order to receive a preliminary injunction, a moving party must show (1) a likelihood of success on the merits; (2) that it will suffer irreparable injury if the injunction is not granted; (3) that such injury will outweigh any harm which the granting of the injunctive relief would inflict upon the defendant; and (4) that the public interest will not be adversely affected by the granting of the motion. *Merrill Lynch v. Bennett*, 980 F.Supp. 73, 74 (D.Me. 1997).

East Ridge's arguments are based on a narrow reading of applicable statutes and unpersuasive references to select case law. The Defendant points to 28 U.S.C. § 2001(a)'s provision that property sold under court order "shall be upon such terms and conditions as the court directs," and 14 M.R.S.A. § 6323's requirement that a foreclosure sale convey the deed to the property "free and clear of all of the interests of the parties in interest in the action." These statutes, the Defendant posits, mean that a foreclosing party may only sell property according to the express terms of the court's Judgment of foreclosure and cannot, for example, attempt to impose a condition that previously existed between the seller and the defaulting party.

The Plaintiff offers *White v. Moore*, 11 N.C.App. 534, 181 S.E.2d 734, 736 (1971), and *Battista v. Liuzzi*, 15 A.D.2d 910, 225 N.Y.S.2d 769 (N.Y.App.Div.1962), for the argument that a judicial sale of property must conform strictly to the Judgment and the terms and conditions of the sale may

not deviate therefrom. The *White* case involved a special proceeding to partition certain property and, in that case, the judicially appointed commissioner, acting beyond the scope of his commission and without authority from the court, added a condition at public sale, that the property could not be used for house trailers or an automobile junkyard. In a brief opinion, the *White* court had no difficulty concluding that the commissioner had exceeded his commission by imposing restrictions beyond the authority granted to him by the court. Similarly, in *Battista,* the Appellate Division of the Supreme Court of New York in a one paragraph decision merely recites the general principle that a judicial sale of property must conform to and not deviate from the Judgment.

It is one thing to say that a public sale must not contradict the express terms of a Judgment. It is quite another thing to say that where the Judgment makes no express reference to federal law or regulation, the public sale must be carried out as if the law or regulation does not exist. *Breeding Motor Freight Lines v. R.F.C.,* 172 F.2d 416, 423 (10th Cir.1949) ("An officer selling property under a Judgment of a court can sell only in substantial compliance with the terms and conditions provided in the Judgment, and the law governing a sale of that kind which is incorporated into and made a part of the Judgment"). The federal regulations in this case are extremely explicit. The 1987 version read: "If a project is sold at foreclosure, the restrictive-use provisions will be added to the deed." 7 C.F.R. § 1965.90(7). The regulations mandate that the notice of public sale set forth the restrictive covenant: "For MFH loans, the advertisement will state the restrictive-use provisions which will be included in any deed used to transfer title." 7 C.F.R. § 1955.15(f). The Court concludes that these provisions of federal regulation

must apply to the public sale of the East Ridge property, regardless of whether the Judgment made express reference to them.

Moreover, this Defendant's claim it did not know during the redemptive period of the Government's intent to sell the property with the restrictive-use provision strikes this court as incredible. The Instant Credit Agreement, Mortgage, and Security Agreement, which East Ridge signed, each referred to the applicable federal regulation, clearly stating that any foreclosure sale would include a restrictive-use provision. Other than answering the Complaint, East Ridge, acknowledging its default, failed to participate further in the foreclosure process. Now, after waiting on the sidelines, East Ridge comes to court in the vain hope that the wording of the foreclosure Judgment will free it from the restrictions it accepted when it assumed its obligations under the loan, thereby releasing the full value of the property to East Ridge's substantial benefit. Knowing that no Judgment can ever include a reference to every possible law or regulation that may be applicable to the foreclosure, East Ridge in effect urges this court to begin a process whereby it would receive a windfall by rewriting its bargain with the federal government. The court will not do so.

As the Defendant has not shown a likelihood of success on the merits, it is not necessary to consider the other prongs of the preliminary injunction standard.

## III. Conclusion

For the foregoing reasons, the Defendant's Motion for a Preliminary Injunction is DENIED.

SO ORDERED.