STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-411

2004 JUN 29 A 11: 19

DOWNEAST MORTGAGE CORPORATION,

Plaintiff

v.

TRICIA A. BALZANO,
CASEY H. STOUTENBERG and
JAMES JOYCE,

Defendants

ORDER ON PLAINTIFFS'
MOTION FOR TEMPORARY
RESTRAINING ORDER

DONALD L.
LAW

JUL 20 2004

This matter is before the court on the motion of the plaintiff Downeast Mortgage Corporation ("Downeast") for temporary injunctive relief to enjoin the defendants from breaching their respective Noncompetition and Nondisclosure Agreements with Downeast. For the reasons hereafter recited, the motion is denied.

In order to obtain a TRO, the plaintiff must establish: (1) that it will suffer irreparable injury if an injunction is not granted, (2) that such injury will outweigh any harm which granting the injunctive relief would inflict on the defendants, (3) that there is a likelihood of success on the merits, and (4) that the public interest will not be adversely affected by granting the injunction." *Ingraham v. University of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982); *cited with approval in Cumberland Farms, Inc. v. Everett*, 600 A.2d 398, 399 n.1 (Me. 1991). The motion record discloses the following:[1]

---

[1] At the motion hearing, the plaintiff offered a fax copy of the purported affidavit of Michele Hebert. The court grants the defendants' oral motions to strike that document from this proceeding for two reasons. First, a facsimile copy is not acceptable as a filing. M.R. Civ. P.

The defendants were all formerly employed by Downeast, which is engaged in the business of originating, funding, refinancing and servicing residential mortgages. The defendant Joyce was hired as a loan officer on August 15, 2000, the defendant Balzano was hired as a loan officer on December 15, 2002, and the defendant Stoutenberg was hired as a loan processor on October 20, 2003. Each had access to Downeast's confidential proprietary and client information. After their hire, each defendant entered into a Noncompetition and Nondisclosure Agreement with Downeast.

On June 2, 2004, Balzano resigned from Downeast. Joyce and Stoutenberg both resigned thirteen days later. Thereafter, all three went to work as loan officers for Meridian Mortgage Group, a competitor of Downeast.

1.    Noncompetition

Downeast asserts that all of the defendants have breached the noncompetition provision of their agreements. The plaintiff has centered its claim of irreparable injury as to this alleged breach on the defendants' alliance with a competitor and their prohibited use of client names, documents and information to solicit business. From this premise, the plaintiff asserts that, absent injunctive relief, it will lose its goodwill and its client base. Injunctive relief is not ordinarily granted where, as here, monetary relief is available. This is because "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Bishop*, 839 F. Supp. at 73-74; *see also Merrill Lynch, Pierce, Fenner & Smith v. Bennert*, 980 F. Supp. 73, 75

---

5(f). Second, although the opening statement of the document indicates that Ms. Hebert affirms its contents, the form of the purported "jurat" is that of an acknowledgment.

2

(D.Me. 1997) (any damages caused by loss of prospective clients due to mass exodus of multiple brokers could be calculated by evidence of the past history of earnings on the accounts and expert testimony); *Ikon Office Solutions, Inc. v. Belanger*, 59 F. Supp. 2d 125 (D.Mass. 1999) (loss of good will is not necessarily irreparable, and can be calculated based on evidence that former employee improperly lured customers away from employer). Thus, because loss of good will and future economic injury arising from the defendant's alleged alliance with a competitor are frequently quantified and awarded in litigation, the claim that the plaintiff will suffer irreparable harm is speculative.

The plaintiff also argues that the employment agreement provides for injunctive relief and, therefore, a TRO should be issued. However, courts have rejected arguments that these provisions are binding on the courts. *Bennert*, 980 F. Supp. at 76. As telling, the Joyce and Stoutenberg agreements each include a liquidated damages provision for a breach of the noncompete condition.

Based upon the foregoing, the Court cannot conclude that the plaintiffs will suffer immediate and irreparable injury with respect to the claimed breaches of the noncompetition provisions if a TRO is not entered.

2. <u>Nondisclosure</u>

Downeast also alleges that Joyce and Stoutenberg, but not Balzano, breached the nondisclosure provision by taking client files and supporting documentation. The plaintiff offers the affidavit of James Skvorak in support of these assertions. *See* Skvorak Afft. ¶¶ 12, 40-52. In responding affidavits, Joyce and Stoutenberg deny initiating any contact with Downeast's clients and deny taking or removing any of Downeast's files or materials.

Most of Mr. Skvorak's assertions lack specificity, are not corroborated by supporting exhibits or documents, and for the most part appear to be conjecture or surmise. Although he does specify two incidents, they are concluded matters for which damages may be ascertained and there is insufficient record evidence of a continuing or more widespread breach of the nondisclosure provisions. There is also insufficient evidence that these defendants are in the possession of the plaintiff's property or business records.

One incident involved the loan application of Anthony Marchetti. While at Downeast, Joyce and Stoutenberg worked on the loan application and file and, following their resignations, arranged for the loan to be handled by Residential Mortgage Services, Inc. ("RMS"). Skvorak Afft. ¶ 46. RMS was a competitor of Downeast and had a business relationship with Meridian. *Id.* ¶¶ 8, 9. Joyce and Stoutenberg did not deny this, but Stoutenberg explained their action as being motivated by a concern for the client – that is, that their resignations might prevent the Marchetti loan from closing. Stoutenberg Afft. ¶ 21; Joyce Afft. ¶ 8. Stoutenberg further explained that they did not receive a fee or financial benefit from directing the loan to RMS. Stoutenberg Afft. ¶ 21. Whatever their intent, the transfer of the loan to RMS of necessity had to include the transfer of Marchetti's loan documents.

The other incident involved the loan application of Erin and Nathan Travers. Joyce and Stoutenberg worked on this file and the loan was approved. After Joyce and Stoutenberg resigned from Downeast, Mrs. Travers wrote to Downeast complaining that Stoutenberg called the Travers to say that he and Joyce left Downeast, were working at Meridian, had the Travers' loan application package and documentation, and that the loan was "good to go".

4

Skvorak Afft. ¶ 49. Stoutenberg denies that he told the Travers that he and Joyce had the Travers' loan package at Meridian. Stoutenberg Afft. ¶ 20; *but see* Skvorak Afft. at Exh D. It is difficult, if not impossible, on the quality of this evidence to ascertain the credibility of these contradictory assertions.

Accordingly, on the motion record in this case, the court cannot conclude that there is a likelihood of the plaintiff's success with respect to the claimed ongoing breaches of the nondisclosure provisions of the Stoutenberg and Joyce agreements. *Ingraham*, 441 A.2d at 693.

## DECISION

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order On Plaintiff's Motion For Temporary Restraining Order in the Civil Docket by a notation incorporating it by reference, and the entry is

Plaintiff's Motion for Temporary Restraining Order is DENIED.

Dated: June 29, 2004

_____
Justice, Superior Court

5

PAUL MCDONALD ESQ
PO BOX 9729
PORTLAND ME 04104

ROBERT FRANK ESQ
PO BOX 126
PORTLAND ME 04112

MELISSA HEWEY ESQ
PO BOX 9781
PORTLAND ME 04112