ENTERED AUG 2 2 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-14-303
JAN-CUM-08-05-14

NORTHERN BENEFITS
OF MAINE, LLC,

    Plaintiff

    v.

VERONICA MOWER,

    and

ATENTO INSURANCE
SERVICES, LLC

    Defendants

ORDER ON MOTION
FOR TEMPORARY
RESTRAINING ORDER

STATE OF MAINE
Cumberland ss Clerk's Office

AUG 05 2014

RECEIVED

This matter is before the court on plaintiff Northern Benefits of Maine, LLC's ("Northern") motion for a temporary restraining order. The court heard arguments from counsel and testimony from defendant Mower on July 31, 2014. The parties also stipulated to the original of the employment agreement between Northern and Veronica Mower (Mower), which is a two-sided document of twelve numbered-pages. For the following reasons, plaintiff's motion is denied.

BACKGROUND

Defendant Mower was employed as a Benefits Manager at Down East Insurance Agency[1] ("Down East") when plaintiff Northern purchased the company on December 2, 2013. As part of the purchase, Northern agreed to

---

[1] Down East is the business name of Consolidated Solutions II, LLC.

offer Mower a 90-day trial period of employment. On the day of the purchase, Mower signed an assignment of her employment agreement with Down East to Northern and a separate employment agreement between her and Northern. Both agreements contained non-competition and non-solicitation provisions. Down East's agreement included acceptance provisions as well.

In February 2014, Mower was terminated from Northern. She then began working for defendant Atento Insurance Services, LLC, which is one of Northern's competitors. Northern alleges that Mower has violated the non-solicitation provision in her employment agreement and seeks injunctive relief and money damages against Mower and Atento.

PROCEDURAL HISTORY

Plaintiff filed a verified complaint seeking a temporary restraining order on July 7, 2014. Defendants received notice of the action, filed a brief in opposition to the motion, and presented arguments and evidence at the July 31, 2014 hearing before the court. Because both sides had sufficient notice, the court will treat the motion for a temporary restraining order as one for a preliminary injunction. *See Clark v. Goodridge*, 632 A.2d 125, 127 (Me. 1993) ("A hearing on a TRO may be treated as a hearing on preliminary injunction . . . when there is sufficient notice and when the parties are in a position to present evidence and legal arguments for or against a preliminary injunction.").

## DISCUSSION

1. Trade Secrets

Plaintiff argues that defendant Mower has misappropriated a trade secret, which entitles plaintiff to injunctive relief.[2] *See* 10 M.R.S. § 1543 (2013) ("Actual or threatened misappropriation may be restrained or enjoined."). Trade secret is defined by statute as:

> [I]nformation, including, but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> **A.** Derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> **B.** Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

10 M.R.S. § 1542(4). The court must examine the following five factors to determine whether the information in this case constitutes a trade secret:

(1) The value of the information to the plaintiff and to its competitors;

(2) The amount of effort or money the plaintiff expended in developing the information;

(3) The extent of measures the plaintiff took to guard the secrecy of the information;

(4) The ease or difficulty with which others could properly acquire or duplicate the information; and

---

[2] Plaintiff argues that if defendant has misappropriated a trade secret, the court does not need to apply the four-factor test for granting a preliminary injunction. The court does not need to determine whether plaintiff is correct on this point because the court finds that plaintiff has not demonstrated the misappropriation of a trade secret as defined by statute.

3

(5) The degree to which third parties have placed the information in the public domain or rendered the information 'readily ascertainable' through patent applications or unrestricted product marketing.

*Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 26 n.6, 770 A.2d 97 (quoting *Spottiswoode v. Levine*, 1999 ME 79, ¶ 27 n.6, 730 A.2d 166).

At this stage of the case, plaintiff has failed to show that the information in defendant's possession constitutes a trade secret. Plaintiff has not explained precisely what information was misappropriated, the value of that information, or whether it can be duplicated. Much of the information regarding plaintiff's customers is likely public information. *See OfficeMax Inc. v. County Qwick Print, Inc.*, 751 F. Supp. 2d 221, 250 (D. Me. 2010) *vacated on other grounds, OfficeMax, Inc. v. Levesque*, 658 F.3d 94 (1st Cir. 2011) (finding that basic information such as customer names and addresses were "already in the public domain, and . . . easily ascertainable by . . . competitors"). Plaintiff is not entitled to a preliminary injunction on the grounds that defendant Mower has misappropriated a trade secret. Nevertheless, "confidential knowledge or information protected by a restrictive covenant need not be limited to information that is protected as a trade secret by the UTSA." *Bernier*, 2001 ME 17, ¶ 15, 770 A.2d 97. Thus, the court must look to the non-solicitation agreement involved in this case to decide whether plaintiff is entitled to injunctive relief.

2. Non-Solicitation Agreement

The first count of plaintiff's complaint alleges that Mower has violated

4

the non-solicitation provision in her employment agreement.[3] To obtain a preliminary injunction on this count, plaintiff has the burden of demonstrating that four criteria are met:[4]

> (1) [plaintiff will] suffer irreparable injury if the injunction is not granted;
>
> (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party;
>
> (3) [plaintiff] has a likelihood of success on the merits (at most a probability; at least, a substantial possibility; and
>
> (4) the public interest will not be adversely affected by granting the injunction.

*Bangor Historic Track, Inc. v. Dep't of Agric.*, 2003 ME 140, ¶ 9, 837 A.2d 129. If plaintiff fails to establish any one of these criteria, injunctive relief must be denied. *Id.* ¶ 10. "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."[5] *Dobson v. Dunlap*, 576 F. Supp. 2d 181, 188 (D. Me. 2008) (quotation marks omitted).

### a. Balance of Harms

Because plaintiff is not seeking to enforce the non-competition

---

[3] The agreement also contained a non-competition provision, but plaintiff is not seeking to enforce that provision. *See Chapman & Drake v. Harrington*, 545 A.2d 645, 647 (Me. 1988) ("[P]rotecting the employer simply from business competition is not a legitimate business interest to be advanced by such an agreement.").

[4] Paragraph 9 of the Employment Agreement between Mower and Northern, which states that the company shall be entitled to an injunction in the event of a breach, does not affect the court's analysis. (Compl. Ex. B ¶ 9); *see Merrill Lynch, Pierce, Fenner & Smith v. Bennert*, 980 F. Supp. 73, 76 (D. Me. 1997) ("[I]t is against public policy to allow the parties to abrogate by contract a public policy-based limitation upon the exercise of the Court's equitable jurisdiction.").

[5] The Law Court has found it appropriate to consider federal case law for guidance on motions for temporary restraining orders and preliminary injunctions. *Clark*, 632 A.2d at 127 n.2.

5

provision in the employment agreement, the harm to defendant Mower is not as severe. Courts have granted injunctions on limited non-competition agreements. *See, e.g., Everett J. Prescott, Inc. v. Ross*, 383 F. Supp. 2d 180, 192 (D. Me. 2005) (granting preliminary injunction for breach of a non-competition agreement, that "hampers, but does not eliminate [defendant's] ability to obtain employment"). Defendant Mower would not be prohibited from working but would only be restricted from enticing Northern's customers away from Northern. The harm to plaintiff therefore outweighs any harm to the defendants in this case.

### b. Public Interest

Because the Law Court has found that reasonable restrictive covenants in employment agreements are valid, injunctive relief would not be against the public interest. *Bernier*, 2001 ME 17, ¶¶ 15-17, 770 A.2d 97; *see also Merrill Lynch, Pierce, Fenner & Smith v. Bishop*, 839 F. Supp. 68, 72 (D. Me. 1993) ("[T]he public interest will not be adversely affected by the granting of preliminary injunctive relief because such relief simply enforces the contractual rights of the parties and has no negative effect discernible to the Court upon any public interest, if any exists, in the present controversy.").

### c. Likelihood of Success on the Merits

"To demonstrate likelihood of success on the merits, plaintiffs must show more than mere possibility of success—rather, they must establish a

strong likelihood that they will ultimately prevail." *Outside Television, Inc. v. Murin*, 977 F. Supp. 2d 1, 8 (D. Me. 2013) (quotation marks omitted). To succeed on the merits, plaintiff will have to show there is an enforceable non-solicitation agreement and that Mower violated that agreement.

i. Enforceability of the Non-Solicitation Agreement

Defendants make several arguments regarding the enforceability of the non-solicitation provision in the employment agreement. First, defendant Mower contends that she was only handed two pages of the agreement: page one and page twelve, which she signed. Mower says that she never saw the remaining pages of the agreement, including the non-solicitation provision. The court finds that Mower's testimony on this point is not credible. In the original of which she signed, page one of the agreement ends with an unfinished definitions section and the top of page twelve is paragraph numbered "18" and page twelve is on the back of page eleven. Thus, it would have been obvious to Mower that she did not receive the complete agreement if she was only handed the first and last page.

Next, defendants argue that both the agreement Mower signed while at Down East, which was assigned to Northern, and the new agreement she signed on December 2, 2013 fail for lack of consideration. The original agreement between Mower and Down East includes a provision that states $10,000 of Mower's salary is consideration for agreeing to the non-competition provision. (Munsey Aff. Ex. 2, at 2.) Mower agreed to the

7

assignment of the Down East employment agreement to Northern. (Compl. Ex. A.) In exchange, Northern agreed to give defendant Mower a 90-day trial period of employment. (Sturtevant Aff. ¶ 2); *see Brignull v. Albert*, 666 A.2d 82, 84 (Me. 1995) ("Employment itself has been held to be consideration for a noncompetition covenant in an employment contract."). Defendants argue that Northern never intended to retain Mower as an employee, but Northern has offered evidence that she was terminated because of her poor job performance. (Sturtevant Aff. ¶ 12.) Accordingly, plaintiff has shown that it will likely succeed in proving Mower signed a valid non-solicitation agreement.

### ii. Violation of the Agreement

The non-solicitation provision provides:

> The Employee agrees that, during the Term of this Agreement . . . and during the period of three (3) years following the termination of this agreement . . . Employee . . . will not in any such manner, compete with or solicit or call on any Customer who was a Customer at any time during the period one year prior to the termination of the Employee's arrangement with the Company, for the purpose of inducing such Customer to purchase a competing product.

(Compl. Ex. B, ¶ 7.) Defendants argue that Mower has not solicited any of Northern's customers because the customers in question all contacted her to buy insurance products. With respect to one of the customers, Mower alleges that she merely completed the insurance contract for Northern, even though she no longer worked for Northern. Mower argues that she cannot be deemed to have breached the non-solicitation agreement for simply accepting

8

business, although the assigned agreement included acceptance of customers.

Plaintiff alleges in its complaint that Mower contacted three of its former clients that it purchased from Down East. In addition, plaintiff relies on an affidavit, which names two more former clients that Mower allegedly contacted. (Sturtevant Aff. ¶¶ 15-16.) One customer, Ross Burgess, acknowledges in an email to Adam Sturtevant, Vice President of Northern, that Mower contacted him about processing his policy. Based on this information, the court concludes that plaintiff will likely have at least some success on the merits. This is not a case, however, in which the likelihood of success is so great so as to influence the court's decision on the other preliminary injunction factors. *See Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 564 F. Supp. 2d 63, 67 (D. Me. 2008) ("[W]hen the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm . . . .").

### d. Irreparable Injury

"'Irreparable injury' is defined as injury for which there is no adequate remedy at law." *Bangor Historic Track, Inc.*, 2003 ME 140, ¶ 10, 837 A.2d 129 (quotation marks omitted). Plaintiff argues it will suffer irreparable injury in this case because there is no adequate remedy for the loss of good will and harm to its business reputation. Plaintiff relies in part on the following passage from *Maine Civil Remedies:*

> [A]n employer can readily obtain injunctive relief when the former employee goes beyond mere competition and actually

9

solicits the employer's customers, exploits the employer's trade secrets, or otherwise takes improper advantage of the employee's knowledge of the employer's business or the employee's influence over the employee's customers.

Horton & McGehee, *Maine Civil Remedies*, § 5-5(d)(3) at 117-18 (4th ed. 2004). That treatise identifies the difficulty of measuring damages as a basis for finding irreparable injury. *See id.* § 5-3(a) at 103. As one of the cited cases explains, "[w]hile damage awards have been fashioned to compensate for injury to a business' reputation and good will, such damages are difficult to calculate with any degree of certainty or accuracy." *Nelson & Small, Inc. v. Polaris Indus. Partners, L.P.*, 1989 Me. Super. LEXIS 199, at *6-7 (Sept. 20, 1989). In *Nelson & Small*, the plaintiff sought to enforce a distributorship agreement that allowed plaintiff to sell defendant's snowmobiles. *Id.* at *1-3. As the court explained, "[b]eyond the difficulty of measuring the loss of good will, monetary damages are simply inadequate to compensate for the loss of an entire line of products." *Id.* at *9. Unlike in this case, *Nelson & Small* depended on their agreement to sell defendant's snowmobiles, which constituted 25% of their business. *Id.* at *9-10.

Other Maine decisions have rejected the argument that the difficulty of determining damages for a loss of business good will supports a finding of irreparable injury. *See Bishop*, 839 F. Supp. at 74; *Rencor Controls, Inc. v. Stinson*, 230 F. Supp. 2d 99, 103-04 (D. Me. 2002); *Parkview Adventist Med. Ctr. v. Streeter*, 2006 WL 6376827 (Me. Super. Ct., Dec. 28, 2006); *Downeast Mortgage Corp. v. Balzano*, 2004 WL 1925525, at *1 (Me. Super. Ct., June 29,

10

2004). As the *Balzano* court (*Hjelm, J.*) explained, "because loss of good will and future economic injury arising from the defendant's alleged alliance with a competitor are frequently quantified and awarded in litigation, the claim that the plaintiff will suffer irreparable harm is speculative." *Balzano*, 2004 WL 1925525, at *1.

Plaintiff also relies on *Everett J. Prescott, Inc. v. Ross*, in which the court found irreparable harm where "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Everett J. Prescott, Inc. v. Ross*, 383 F. Supp. 2d 180, 192 (D. Me. 2005) (quotation marks omitted). In that case, however, the defendant admitted to soliciting his former employer's customers. *Id.* The court also appeared to accord great weight to the unique nature of the parties' business, which the court described as follows:

> The pipe and valve distribution business is a world unto itself. As in many businesses, vendors sell to distributors, which in turn sell to customers. However, as described by EJP, the pricing practices in the pipe and valve distribution business are reminiscent of a North African casbah: all prices are negotiable. Prices for the same item vary depending on who is selling, who is buying, what is being sold, the project being built, the distributor, and a host of other factors.

*Id.* at 183. Thus, the pipe and valve industry involved many sales at different prices, which would make calculating damages much more difficult. The court also noted the defendant's particular skill in the business:

> Having worked his whole adult life in the pipe and valve

11

business, Mr. Ross carries an impressive set of assets to his job. He has worked the counter and knows the product; he has worked in inside sales, analyzing plans, doing take-offs, pricing, and packaging; he has worked in outside sales; and, he has an engaging personality. But, Mr. Ross brings an unusual mathematical capacity particularly advantageous to this line of work: he can do the multipliers in his head.

*Id.* Thus, of all the Maine cases relied on by the parties, the *Everett* decision is an outlier because of the nature of the business, the defendant's particular expertise, and because the defendant admitted to violating the non-competition agreement.

Based on the evidence submitted to the court, plaintiff has failed to demonstrate that it will suffer irreparable injury. Through discovery, plaintiff will be able to identify any and all of the accounts that Mower has solicited away from Northern and recover damages for Mower's breach of the non-solicitation agreement. Plaintiff offers no explanation as to why its damages will be difficult to ascertain. Unlike in *Everett*, plaintiff has not produced any evidence of the unique characteristics of the industry or any particular skill unique to Mower. Plaintiff has not shown that it will suffer irreparable injury.

CONCLUSION

Plaintiff has failed to demonstrate all of the required elements for the court to grant a temporary restraining order or preliminary injunction.

The entry is:

> Plaintiff's motion for a temporary restraining order or preliminary injunction is DENIED.

12

Plaintiff's request for a hearing on its motion for preliminary injunction is DENIED.

This case will proceed according to the scheduling order dated July 30, 2014.

August 5, 2014

_____
Joyce A. Wheeler
Justice, Superior Court

Plaintiff-Teresa Cloutier Esq/John Lambert Esq
Defendants-Graydon Stevens Esq